ACCEPTED
01-15-00617-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/24/2015 6:00:16 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00617-CV

IN THE COURT OF APPEALS

FIRST COURT OF APPEALS DISTRICT

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/24/2015 6:00:16 PM
CHRISTOPHER A. PRINE
Clerk

BOB DEUELL,
Appellant,

v.

TEXAS RIGHT TO LIFE COMMITTEE, INC.,
Appellee

---

On Appeal from the 152nd Judicial District Court
Of Harris County, Texas
Trial Court Cause No. 2014-32179
Honorable Robert Schaffer, Presiding Judge

---

## APPELLANT'S BRIEF

---

**DENTON NAVARRO ROCHA BERNAL HYDE & ZECH, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745-5292
(512) 279-6431
(512) 279-6438 (Facsimile)
George E. Hyde
State Bar No. 45006157
Scott M. Tschirhart
State Bar No. 24013655
*ATTORNEYS FOR APPELLANT*

**ORAL ARGUMENTS REQUESTED**

i

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant:** | BOB DEUELL |
| **Appellant's Counsel:** | George E. Hyde |

State Bar No. 45006157
Scott M. Tschirhart
State Bar No. 24013655
**Denton Navarro Rocha Bernal Hyde & Zech, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745-5292
(512) 279-6431
(512) 279-6438 (Facsimile)
George E. Hyde
Scott M. Tschirhart
george.hyde@rampage-aus.com
scott.tschirhart@rampage-aus.com

**Appellee:** TEXAS RIGHT TO LIFE COMMITTEE, INC.

**Appellee Counsel:** N. Terry Adams, Jr.
State Bar No. 00874010
Joseph M. Nixon
State Bar No. 15244800
**Beirne, Maynard & Parsons, L.L.P.**
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
(713) 623-0887
(713) 960-1527 (Facsimile
tadams@bmpllp.com
jnixon@bmpllp.com

James E. "Trey" Trainor, III
State Bar No. 24042052
**Beirne, Maynard & Parsons, L.L.P.**
401 W. 15th Street, Suite 845
Austin, Texas 78701
(512) 623-6700
(512) 623-6701 (Facsimile)
ttrainor@bmpllp.com

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................ii

TABLE OF CONTENTS .......................................................................................iii

TABLE OF AUTHORITIES ................................................................................... v

JURISDICTIONAL STATEMENT....................................................................... 1

STATEMENT OF THE CASE ............................................................................... 1

ISSUES PRESENTED ........................................................................................... 4

1. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because the communications complained of related to Appellant's exercise of free speech under the First Amendment of the United States Constitution and Section 8, Article 1 of the Bill of Rights under the Texas Constitution. ............................................................... 4

2. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of judicial privilege by a preponderance of the evidence.................................................................................................................. 5

3. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of illegal contract by a preponderance of the evidence.................................................................................................................. 5

STATEMENT OF FACTS...................................................................................... 5

STANDARD OF APPELLATE REVIEW ............................................................. 6

SUMMARY OF THE ARGUMENT...................................................................... 7

1. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because the communications complained of related to Appellant's exercise of free speech under the First Amendment of the United States Constitution and Section 8, Article 1 of the Bill of Rights under the Texas Constitution. ............................................................... 9

    Exercise of Free Speech........................................................................... 9

    Shift of Burden....................................................................................... 11

2. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of judicial privilege by a preponderance of the evidence.................................................................................................. 16

   Judicial Privilege............................................................................. 16

3. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of illegal contract by a preponderance of the evidence.................................................................................................. 21

   Illegal Contract............................................................................... 21

PRAYER ............................................................................................ 24

CERTIFICATE OF COMPLIANCE .................................................. 25

CERTIFICATE OF SERVICE............................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426 (Tex. 1997) .................. 11, 12

*Araiza v. Chapa,* 319 S.W.2d 742 (Tex. App.—San Antonio 1958, writ ref'd n.r.e).......................................................................................................... 13, 22

*Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Serv., Inc.,* 441 S.W.3d 345,(Tex. App.—Houston [1st Dist] 2013, pet. denied) .............. 6

*Bird v. W.C.W.,* 868 S.W.2d 767 (Tex. 1994).......................................................... 17

*Crain v. Smith,* 22 S.W.3d 58 (Tex. App.—Corpus Christi 2000, no pet.)................................................................................................ 17, 18, 19

*Crain v. Unauthorized Practice of Law Comm.,* 11S.W.3d 328 (Tex. App.-- Houston [1st Dist.] 1999, pet. denied) ......................................................... 19

*Dallas Ind. Sch. Dist. v. Finlan,* 27 S.W.3d 220 (Tex. App.—Dallas 2000, pet. denied) ...................................................................................... 18, 20

*Daystar Residential, Inc. v. Collmer,* 176 S.W.3d 24 (Tex. App.—Houston [1st Dist] 2004, writ denied) ...................................................................... 18

*Flynn Bros. V. First Med. Assocs.,* 715 S.W.2d 782 (Tex. App.—Dallas 1986, writ refd. n.r.e.).............................................................................. 12, 21

*GNG Gas Systems v. Dean,* 921 S.W.2d 421 (Tex. App.—Amarillo 1996 writ denied)........................................................................................... 13, 22

*Griffin v. Rowden,* 702 S.W.2d 692 (Tex. App.—Dallas 1985, writ ref'd n.r.e)......................................................................................................... 19

*Krishnan v. Law Offices of Preston Henrichson, P.C.,* 83 S.W.3d 295 (Tex. App.—Corpus Christi 2002, pet. denied)....................................... 18

*Laub v. Pesikoff,* 979 S.W.2d 686 (Tex. App.—Houston [1st Dist.] 1998 pet. denied) ..................................................................................................... 17

*Lewis v. Davis,* 199 S.W.2d 146 (Tex. 1947) ..................................................... 13, 22

*Reagan v. Guardian Life Ins. Co.,* 166 S.W.2d 909 (Tex. 1942) ........................... 17

*Russell v. Clark,* 620 S.W.2d 865 (Tex. App-Dallas 1981, writ ref'd n.r.e.) ................................................................................................................ 17, 19

*Watson v. Kaminski,* 51 S.W.3d 825 (Tex. App--Houston [1st Dist] 2001, no pet) ................................................................................................................... 18

**Statutes**

Tex Civ. Prac. & Rem. Code § 27.001(1) ................................................................ 9

Tex Civ. Prac. & Rem. Code § 27.001(3) ............................................................. 7, 9

Tex. Civ. Prac. & Rem. Code § 27.003 .................................................................... 1

Tex. Civ. Prac. & Rem Code § 27.005(1) ................................................................ 7

Tex. Civ. Prac. & Rem Code §27.005(b) .................................................................. 6

Tex. Civ. Prac. & Rem Code §27.005(b)(1) ........................................................... 10

Tex. Civ. Prac. & Rem Code § 27.005(c) .......................................................... passim

Tex. Civ. Prac. & Rem. Code § 27.005(d) ........................................................ passim

Tex. Civ. Prac. & Rem Code §27.006(a) ............................................................. 7, 20

Tex. Civ. Prac. & Rem Code § 27.009 ............................................ 10, 16, 20, 21, 24

Tex. Civ. Prac. & Rem Code § 27.009(1) ............................................................... 24

Tex. Civ. Prac. & Rem Code § 27.009(2) ................................................. 24

Tex. Elec. Code ................................................................................ passim

Tex. Elec. Code § 255.001 ................................................. 5, 6, 12, 13, 22

Texas Advance Directives Act of 1999 .............................................. 5, 19

Texas CitizensPartition Act .................................................................... 1

## Other Authorities

First Amendment to the United States Consititution ...................... 2, 4, 5, 6

Senate Bill 303 .................................................................................. 5, 7

Texas Constitution Section 8, Article 1 of the Bill of Rights ....... 2, 4, 5, 6

MAY IT PLEASE THE COURT:

NOW COMES APPELLANT, Bob Deuell (hereinafter "Appellant" and/or "Deuell" and files this Appellant's Brief in accordance with the Texas Rules of Appellate Procedure ("TRAP").

## JURISDICTIONAL STATEMENT

This is an interlocutory appeal from an Order rendered by a district court adverse to the Appellant by denying his Motion to Dismiss pursuant to Tex. Civ. Prac. & Rem Code §27.003.

## STATEMENT OF THE CASE

Appellee, Texas Right to Life Committee, Inc. filed a tortious interference lawsuit against Appellant, Bob Deuell who was a sitting state Senator. The lawsuit arises out of a series of political attack ads that were run by Appellee and the letters written by Appellant's lawyer to the radio stations that were running the ads. These letters complained of false and defamatory content and that the ads were illegal because they did not contain the disclosures required by the Texas Election Code. This is an appeal from a denial of a motion to dismiss the lawsuit pursuant to the Texas Citizens Partition Act ("the TCPA").

Procedurally, Appellee's lawsuit was filed on June 5, 2014. [C.R. at 4] However, Appellant was not served immediately. Appellant filed a timely Original Answer on August 11, 2014. [C.R. at 11]. Defendant's Motion to Dismiss was filed

1

on September 5, 2014. [C.R. at 14] Defendant argued that the case must be dismissed pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code because 1) the complained of speech was on a matter of public concern and thus protected by Defendant's free speech rights under the First Amendment to the United States Constitution and Section 8, Article 1 of the Bill of Rights to the Texas Constitution [C.R. at 15-16], 2) the affirmative defense of Judicial Privilege applied [C.R. at 16-20], and 3) the affirmative defense of illegality applied. [C.R. at 20-21]. Appellant timely set the Motion to Dismiss for hearing on September 26, 2014. [C.R. at 70]. On September 24, 2014, two days prior to the hearing on Appellant's Motion to Dismiss, Appellee filed a First Amended Petition alleging a federal cause of action pursuant to 42 U.S.C. 1983. [C.R. at 80]. Also on September 24, 2014, Plaintiff filed its Response to Defendant's Chapter 27 Motion to Dismiss. [C.R. at 90]. Plaintiff only addressed Defendant's argument concerning Constitutionally protected freedom of speech and did not address the affirmative defenses.

On September 25, 2014, Appellant filed a Notice of Removal and removed the case to federal court. [C.R. at 99]. In order to maintain Defendant's Motion to Dismiss, on October 15, 2014, Appellant filed Motions to Dismiss under Rule 12 and Chapter 27 of the Texas Civil Practice & Remedies Code in federal court [C.R. at 216]. Before the Court could rule on Appellant's Motions to Dismiss, Appellee

filed its Second Amended Complaint, voluntarily dismissing its federal cause of action. [C.R. at 273] and filed its Motion to Remand. [C.R. at 281].

On December 23, 2014, the federal court remanded the case back to the trial court. [C.R. at 364]. After remand, and without precedential guidance on Chapter 27 concerning the extension of time for a trial court to rule under these circumstances on January 7, 2015, the Appellant filed a Notice of Interlocutory Appeal to this Honorable Court, [C.R. at 367], under Case No. 01-15-00011-CV. Appellee's filed Motion to Dismiss the Appeal for Want of Jurisdiction. On February 24, 2015, this Court issued a Memorandum Opinion granting Appellee's Motion to Dismiss because "*the trial court below has neither denied Beuell's (sic) section 27.003 motion to dismiss nor failed to rule on the motion within 30 days following the date of a hearing on the motion, the Texas Civil Practice and Remedies Code does not permit Beuell's (sic) attempted interlocutory appeal.*"

Once this matter was remanded back to the trial court, Appellant immediately set his Motion to Dismiss for hearing for March 16, 2015. [C.R. at 376]. However, Appellee argued that until the Court issued a Mandate, Appellant's motion could not be heard; therefore, the hearing was passed. On May 15, 2015, the Court issued the Mandate on this matter. On May 18, 2015, Appellant's Motion to Dismiss was reset to June 19, 2015. [C.R. at 378].

3

On June 19, 2015, Appellant's Motion to Dismiss was heard before the Hon. Robert K. Schaffer. [R.R. at 1-27].

On July 1, 2015, Judge Schaffer issued an Order denying Appellant's Motion to Dismiss. [C.R. at 380].

The trial court below erred in denying Appellant's Motion to Dismiss. The trial court should have dismissed the tortious interference claim for three reasons:

First, the trial court should have dismissed Appellee's lawsuit because the communications complained of were based on, related to and in response to Appellant's exercise of the right of free speech.

Second, the trial court should have dismissed Appellee's lawsuit because Appellant established the affirmative defense, by a preponderance of evidence, that the communications complained of were privileged under the judicial privilege.

Finally the trial court should have dismissed Appellee's lawsuit because Appellant established the affirmative defense, by a preponderance of evidence, that the communications complained of were privileged because the contract that was allegedly interfered with was for an illegal purpose.

## ISSUES PRESENTED

1. **Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because the communications complained of related to Appellant's exercise of free speech under the First Amendment of the United States Constitution and Section 8, Article 1 of the Bill of Rights under the Texas Constitution.**

2. **Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of judicial privilege by a preponderance of the evidence.**

3. **Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of illegal contract by a preponderance of the evidence.**

## STATEMENT OF FACTS

Appellee's lawsuit alleges only one cause of action, that being that Appellant tortuously interfered with Plaintiff's contracts to run certain radio ads with Cumulus Media and Salem Communications. [C.R. at 4, 273 and 281].

The ads in question were aired during the lead up to the Texas Republican Primary runoff election held on May 27, 2014. [C.R. at 24, 25 and 26] The ads were political ads that Appellant believes misrepresented the purpose and effect of certain legislation sponsored by Appellant as a State Senator for the State of Texas. That bill was Senate Bill 303 which was designed to add more protection to human life than the existing *Texas Advance Directives Act of 1999.* The ads contained what Appellant believes to be false information about Senate Bill 303 and false and defamatory information regarding Appellant.

Appellee's ads also violated the Texas Election Code in that they did not contain the disclosures required by Texas Election Code 255.001.

In an exercise of Appellee's free speech rights under the First Amendment of the United States Constitution and Section 8, Article 1 of the Bill of Rights contained in the Texas Constitution, Appellant's lawyers, acting on his behalf, wrote letters to the broadcasters explaining in detail why the ads in question contained false and defamatory information and did not contain the proper disclosures required by *Texas Election Code* 255.001. [C.R. at 27-64] These letters also threatened legal action if the ads were not edited to omit the defamatory content and to include the disclosures required by the Texas Election Code. [C.R. at 27-64].

## STANDARD OF APPELLATE REVIEW

In order to obtain a dismissal under Chapter 27 of the Texas Civil Practice & Remedies Code, a defendant must show 'by a preponderance of evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech; the right to petition; or the right of association." Tex. Civ. Prac. & Rem. Code § 27.005(b). This determination is reviewed de novo as an application of law to the facts. *See Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Serv., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist] 2013, pet. denied).

The Court may not dismiss the action if the non-movant can establish, by clear and specific evidence, a prima facie case for each essential element of the claim in question. Tex. Civ. Prac. & Rem. Code § 27.005(c).

"Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d).

"In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a).

## SUMMARY OF THE ARGUMENT

1. **Free Speech**: The TCPA defines "the exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). A sitting State Senator commenting on legislation he sponsored in the Texas Senate is pure political speech and exactly the kind of free speech that the TCPA was designed to protect. Such comments were about a matter of public concern (the election contest and the intent and effect of Senate Bill 303) as defined in *Texas Civil Practice & Remedies Code* § 27.001(3). The trial court should have dismissed Appellee's lawsuit because Appellant proved by a preponderance of the evidence that Appellee's lawsuit was based on Appellant's exercise of his right of free speech. *See Texas Civil Practice & Remedies Code* § 27.005(1). If Appellant met his burden, then the burden shifts to Appellee to

7

establish, by clear and specific evidence, a prima facie case for each element of the claim in question. Appellee was unable to meet this burden because Appellee failed to attach copies of the alleged contracts that were subject to interference and the only affidavit evidence attached to Appellee's response to the Motion to Dismiss fails to provide clear and specific evidence.

2.     **Judicial Immunity**: Regardless of whether Appellee was able to establish a prima facie case for each element of its tortious interference claim, the TCPA requires that the Court dismiss an Appellee's legal action against Appellant because Appellant established by a preponderance of the evidence each essential element of the valid defense of judicial immunity. *Tex. Civ. Prac. & Rem. Code* § 27.005(d). The Court could only look to the pleadings and the affidavits on file, so the unchallenged allegations regarding the judicial immunity defense and the unchallenged Affidavit of Scott M. Tschirhart are the only evidence on this matter available to the Court. Therefore, the defense of judicial immunity was established by a preponderance of the evidence and the Court should have granted Appellant's Motion to Dismiss.

3.     **Illegal Contract**: Regardless of whether Appellee was able to establish a prima facie case for each element of its tortious interference claim, the TCPA requires that the Court dismiss an Appellee's legal action against Appellant because Appellant established by a preponderance of the evidence each essential element of

8

the valid defense of illegal contract. *Tex. Civ. Prac. & Rem. Code* § 27.005(d). The Court could only look to the pleadings and the affidavits on file, so the unchallenged allegations regarding the illegal contract defense and the unchallenged Affidavit of Scott M. Tschirhart are the only evidence on this matter available to the Court. Therefore, the defense of illegal contract was established by a preponderance of the evidence and the Court should have granted Appellant's Motion to Dismiss.

## ARGUMENTS AND AUTHORITIES

1. **Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because the communications complained of related to Appellant's exercise of free speech under the First Amendment of the United States Constitution and Section 8, Article 1 of the Bill of Rights under the Texas Constitution.**

**Exercise of Free Speech**

"Exercise of the right of free speech" means a communication made in connection with a matter of public concern.

Tex. Civ. Prac. & Rem. Code § 27.001(3)

"Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.

Tex. Civ. Prac. & Rem. Code § 27.001(1)

Appellant hired an attorney to send letters to Cumulus Media and Salem Communications in order to complain about certain political attack ads that misrepresented the purpose and effect of certain legislation sponsored by Appellant

9

as a State Senator for the State of Texas. [C.R. at 27-64]. That bill was Senate Bill 303 which was designed to add more protection to human life than the existing *Texas Advance Directives Act of 1999*. The ads in question were aired during the lead up to the Texas Republican Primary runoff election held on May 27, 2014. The ads contained false information about Senate Bill 303 and false and defamatory information regarding Appellant.

Appellant's attorney wrote a series of letters to Cumulus Media and Salem Communications demanding that they cease and desist in running the false and defamatory ads. [C.R. at 27-64]. A sitting State Senator commenting on a matter of public concern, in this case commenting on political ads that contained false and defamatory information related to the Senator and legislation that he sponsored in the Texas Senate, is pure political speech. This is exactly the kind of speech that the TCPA is designed to protect. Appellee's lawsuit is designed specifically to discourage candidates and office holders from opposing Appellee in any way or even to question the legality of their ads. As the Affidavit of Scott M. Tschirhart shows, the scripts were changed to delete certain defamatory and false information and modified to include the language required by the Texas Election Code. [C.R. at 65].

Appellant established, based on a preponderance of the evidence, that the communications complained of involve the exercise of the right of free speech as required by *Texas Civil Practice & Remedies Code* §27.005(b)(1). Therefore the

Court should have dismissed Appellee's lawsuit. In connection with the dismissal, the Court should have awarded attorneys' fees and costs to Appellant as set forth in *Texas Civil Practice & Remedies Code* § 27.009 or remand the case back to the trial court to make a determination of the proper measure of attorneys' fees and costs to be awarded to Appellant.

**Shift of Burden**

Since Appellant has established that the communications complained of involve the exercise of the right of free speech, the burden shifted to Appellee to establish, by clear and specific evidence, all of the elements of a cause of action for tortious interference with contact. *Tex. Civ. Prac. & Rem Code* §27.005(c).

> In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

*Tex. Civ. Prac. & Rem. Code* §27.006(a).

In order to establish a cause of action for tortious interference, a plaintiff must prove (1) that a contract subject to interference exists; (2) that the defendant committed a willful and intentional act of interference with the contract; (3) that the plaintiff sustained actual damages or loss. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). In order to avoid dismissal pursuant to the TCPA, a plaintiff must establish each of these elements by clear and specific evidence. *Tex.*

11

*Civ. Prac. & Rem Code* § 27.005(c). The only evidence submitted by Appellee in the present case is the Affidavit of James J. Graham. [C.R. at 95].

Appellee fails to establish the first element; that a contract subject to interference exists, because the Affidavit of James J. Graham is conclusory and does not reference the terms of any specific contract(s). There simply is no clear and specific evidence that the contract(s) exist. Because Appellee failed to attach copies of the alleged contracts, there is no way to determine that the contracts are not subject to interference. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431(Tex. 1997)(finding that the express terms of the contract in question showed that it was not subject to tortious interference allegations, and therefore the defendant could not have interfered as a matter of law.). Absent the express language of the alleged contracts, there is no clear and specific evidence that the alleged contracts are not subject to interference or that Appellee is even a party to said contract(s).

Additionally, the Affidavit of James J. Graham does not address the illegality of the alleged contract(s) for failure to have the disclosures required by the Texas Election Code § 255.001.

A defendant cannot be held liable for tortious interference with a contract that is unenforceable because it is illegal. *See Flynn Bros. V. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App.—Dallas 1986, writ ref'd. n.r.e.). A contract is illegal if the contract or its performance will result in a willful violation of a constitution,

12

statute or ordinance. *GNG Gas Systems v. Dean*, 921 S.W.2d 421, 427 (Tex. App.—Amarillo 1996 writ denied); *Araiza v. Chapa*, 319 S.W.2d 742, 743 (Tex. App.—San Antonio 1958, writ ref'd n.r.e). "A contract to do a thing which cannot be performed without a violation of the law is void." *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947).

In this case, the contracts called for the radio stations to run political advertisements that violated *Texas Election Code* 255.001. *Texas Election Code* 255.001 prohibits a person—including a corporate entity—from broadcasting political advertising containing express advocacy that does not indicate in the advertising the following: (1) that it is political advertising; and (2) the full name of the person who paid for the political advertising. These advertisements ended with "Proudly paid for by Texas Right to Life." [C.R. at 24, 25, 26]. The scripts of the advertisements do not contain an acknowledgement that they are, in fact, "political advertising." [C.R. at 24, 25, 26]. Nor do they contain the full name of the person who paid for the advertising. [C.R. at 24, 25, 26]. Therefore, the alleged contracts and the performance thereof, would have resulted in a willful violation of a statute, the *Texas Election Code* § 255.001.

Because the *Affidavit of James J. Graham* does not address the illegality of the alleged contracts, it does not provide the clear and specific evidence required to avoid dismissal. *Tex. Civ. Prac. & Rem Code* § 27.005(c).

13

The *Affidavit of James J. Graham* likewise fails to provide clear and specific evidence with regard to the second and third elements as well.

With regard to the required element that the defendant committed a willful and intentional act of interference with the contract, the Affidavit only refers to a hearsay statement:

> On or about May 14, 2014, Texas Right to Life Committee, Inc., received notice from Cumulus Media and Salem Communications that agents of Mr. Deuell had contacted them and that they were suspending the airing of our commercials based upon the legal threats made by Mr. Deuell.

[C.R. at 96]. This allegation is not only hearsay, but it is not clear and specific about what individual from either Cumulus Media or Salem Communications sent the notice. It is not clear and specific about what the form of the notice was. It is not clear and specific about what individual employee or agent of Texas Right to Life Committee, Inc. received the notice. It is not specific as to the contents of the notice. It is not even specific as to the nature of the alleged tortious act. The *Affidavit of James J. Graham* does not provide the clear and specific evidence necessary to prove that Appellant committed a willful and intentional act of interference with any specific contract and it does not provide the clear and specific evidence required to avoid dismissal. *Tex. Civ. Prac. & Rem Code* § 27.005(c).

14

Likewise, the *Affidavit of James J. Graham* fails to provide clear and specific evidence with regard to the required element that the plaintiff sustained actual damages or loss. The Affidavit merely contains a conclusory statement that:

> Recognizing that Mr. Deuell's interference had disrupted the timing and effectiveness of the radio advertisements originally contemplated by Texas Right to Life Committee, Inc., the organization recognized that it needed to take remedial measures to make up for the lost advertising time so it contracted with CBS Radio Texas for additional airtime in the Dallas/Ft Worth media market for the new radio advertisement. Texas Right to Life Committee, Inc., paid approximately $15,037 for the placement and airing of the new radio advertisements with CBS Radio Texas.

[C.R. at 97]. This statement does not provide clear and specific evidence as to how many times the existing ads did not run. The statement does not provide clear and specific evidence of the content of the replacement ads. The statement does not provide clear and specific evidence of the number of times the ads on CBS Radio Texas were run. The statement does not provide clear and specific evidence that the ads were targeted in any way to the same audience or time spots that the Cumulus Media or Salem Communications ads would have reached, in fact, because the ads were run on different stations, it would be logical to conclude that these ads were targeted at a different audience.

Therefore, the *Affidavit of James J. Graham* does not provide the clear and specific evidence necessary to prove that Appellee sustained any actual damages required to avoid dismissal. *Tex. Civ. Prac. & Rem Code* § 27.005(c).

15

Because Appellee cannot carry the burden of showing, by clear and specific evidence, every element of its tortious interference claim, the Court should have dismissed Appellee's lawsuit. In connection with the dismissal, the Court should have awarded attorneys' fees and costs to Appellant as set forth in *Texas Civil Practice & Remedies Code* § 27.009.

> **2. Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of judicial privilege by a preponderance of the evidence.**

**Judicial Privilege**

Even if the Appellee could establish, by clear and specific evidence, every element of its tortious interference claim (and it cannot do so), the Court must dismiss Appellee's lawsuit if Appellant establishes, by a preponderance of the evidence, each essential element of a valid defense to Appellee's tortious interference claim. *Tex. Civ. Prac. & Rem. Code* §27.005(d).

The Texas Supreme Court described the judicial privilege in this manner: "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case."

16

*Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). The Court later expanded the scope of the privilege beyond slander and libel. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771-72 (Tex. 1994) (extending the absolute privilege to pre-trial proceedings and statements defeating the plaintiff's negligence claim where plaintiff's damages were basically defamation damages.). "Although most cases addressing the judicial communications privilege involve claims of libel or slander, Texas courts have consistently applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim." *Laub v. Pesikoff*, 979 S.W.2d 686, 690 (Tex. App.—Houston [1st Dist.] 1998 pet. denied). The judicial immunity recognized in *Bird* is not limited only to claims styled as defamation claims, but instead extends to "claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim." *Crain v. Unauthorized Practice of Law Comm.*, 11 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

It is well established under Texas law that letters written by attorneys in anticipation of litigation are absolutely privileged. *See Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. App-Dallas 1981, writ ref'd n.r.e.) "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications **preliminary to a proposed judicial proceeding**, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel,

17

if it has some relation to the proceeding." *Id.*(emphasis added); *see also Watson v. Kaminski,* 51 S.W.3d 825, 827-28 (Tex. App.—Houston [1st Dist] 2001, no pet)(holding that an attorney's letter alleging that a prisoner was trying to extort money from appellants and that he was likely to be sued if he attempted to do so came within the judicial privilege even though no litigation was pending.); *Krishnan v. Law Offices of Preston Henrichson, P.C.,* 83 S.W.3d 295, 301-03 (Tex. App.— Corpus Christi 2002, pet. denied)(finding that an attorney's letters sent to a doctor to give notice of a negligence claim [under 4590i] and to request records, even though suit was never actually filed, were made in contemplation of judicial proceeding and were therefore privileged); *Crain v. Smith,* 22 S.W.3d 58, 62-63 (Tex. App.—Corpus Christi 2000, no pet.). Even if the potential litigants later decide not to file suit, "[t]here is no requirement that a person actually get sued for the privilege to apply; only that the statements are related to a contemplated judicial proceeding." *Krishnan,* 83 S.W.3d at 302-03.

> Whether a lawyer's out-of-court statement is related to a proposed or existing judicial proceeding is a question of law to be determined by the court. When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding." All doubt should be resolved in favor of the relevancy of the statement.

*Dallas Ind. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 239 (Tex. App.—Dallas 2000, pet. denied)(quoting *Russell.*); *see also Daystar Residential, Inc. v. Collmer,* 176 S.W.3d

18

24, 28 (Tex. App.—Houston [1st Dist] 2004, writ denied)(finding that statements made by a lawyer to a newspaper in contemplation of and preliminary to filing suit were absolutely privileged).

The absolute judicial privilege applies to tortious interference with contract claims. *See Griffin v. Rowden*, 702 S.W.2d 692, 695 (Tex. App.—Dallas 1985, writ ref'd n.r.e)(holding that the filing of a *lis pendens* was absolutely privileged in an action for tortious interference with contract.); *Crain v. Unauthorized Practice of Law Committee*, 11 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.], 1999 pet denied)(concluding that prior testimony by a witness was subject to the affirmative defense of absolute immunity to a claim of tortious interference).

In the present case, the communications complained of are demand letters sent to radio stations. [C.R. at 27-64]. Each of these letters was sent by Scott Tschirhart, an attorney representing Senator Deuell. [C.R. at 27-64]. Each of these letters specifically warn of anticipated litigation. [C.R. at 27-64] These letters request if the recipient will accept service of process or whether suit must be served on their registered agents. [C.R. at 27-64]. These letters contain notices of litigation hold and preservation demands, including:

**LITIGATION HOLD & PRESERVATION DEMAND**

You are hereby on notice and should have reason to believe that litigation may result from the claims described above. . . pursuant to state and federal law, you are now under a legal duty to preserve all

19

evidence, whether printed or electronic that might become relevant in this matter. . .

[C.R. at 27-64]. Finally, these letters include admonitions for the recipients to contact their legal counsel immediately. [C.R. at 27-64].

Since the communications complained of are clearly demand letters sent from an attorney in anticipation of litigation, "'the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding.' All doubt should be resolved in favor of the relevancy of the statement." *Dallas Ind. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 239 (Tex. App.—Dallas 2000, pet. denied).

Appellee has offered no controverting evidence, and in its Response to Appellant's Motion to Dismiss, Appellee failed to address the judicial privilege defense in any way. [C.R. at 90].

> In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

*Tex. Civ. Prac. & Rem. Code* §27.006(a).

Since, there are no challenges to the pleadings or controverting affidavits on file with regard to the defense of judicial privilege, Appellant has established, by a preponderance of the evidence, each essential element of a valid defense of judicial

20

privilege to Appellee's tortious interference claim. *Tex. Civ. Prac. & Rem. Code* §27.005(d).

The court should have dismissed Appellee's lawsuit and this Court should likewise dismiss Appellee's lawsuit. In connection with the dismissal, the Court should award attorneys' fees and costs to Appellant as set forth in *Texas Civil Practice & Remedies Code* § 27.009 or remand the case back to the trial court to make a determination of the proper measure of attorneys' fees and costs to be awarded to Appellant.

   3. **Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code should have been granted because Appellant established the affirmative defense of illegal contract by a preponderance of the evidence.**

**Illegal Contract**

Even if the Appellee could establish, by clear and specific evidence, every element of its tortious interference claim (and it cannot do so), the Court must dismiss Appellee's lawsuit if Appellant establishes, by a preponderance of the evidence, each essential element of a valid defense to Appellee's tortious interference claim. *Tex. Civ. Prac. & Rem. Code* §27.005(d).

A defendant cannot be held liable for tortious interference with a contract that is unenforceable because it is illegal. *See Flynn Bros. V. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App.—Dallas 1986, writ ref'd. n.r.e.). A contract is illegal

if the contract or its performance will result in a willful violation of a constitution, statute or ordinance. *GNG Gas Systems v. Dean*, 921 S.W.2d 421, 427 (Tex. App.— Amarillo 1996 writ denied); *Araiza v. Chapa*, 319 S.W.2d 742, 743 (Tex. App.— San Antonio 1958, writ ref'd n.r.e). "A contract to do a thing which cannot be performed without a violation of the law is void." *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947).

In this case, the contracts called for the radio stations to run political advertisements that violated *Texas Election Code* §255.001. *Texas Election Code* 255.001 prohibits a person—including a corporate entity—from broadcasting political advertising containing express advocacy that does not indicate in the advertising the following: (1) that it is political advertising; and (2) the full name of the person who paid for the political advertising. These advertisements ended with "Proudly paid for by Texas Right to Life." [C.R. at 24, 25, 26]. The scripts of the advertisements do not contain an acknowledgement that they are, in fact, "political advertising." [C.R. at 24, 25, 26]. Therefore, the alleged contracts and the performance thereof, would have resulted in a willful violation of a statute, the *Texas Election Code*. After the letters dated May 19, 2014 (which specifically complained about the violation of the Texas Election Code) were sent, the scripts of the advertisements were changed to include language that complied with the *Texas Election Code* and no further letters were sent to the radio stations. [C.R. at 65-66].

Appellee has offered no controverting evidence, and in its Response to Appellant's Motion to Dismiss, Appellee failed to address the illegal contract defense in any way. [C.R. at 90]. Appellee argued for the first time at the hearing on June 19, 2015 that the Texas Election Code provision was no longer enforceable. [R.R. at 6, 7]. However,

> In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

*Tex. Civ. Prac. & Rem. Code* §27.006(a).

Since, there are no challenges to the pleadings or controverting affidavits on file with regard to the defense of illegal contract, Appellant has established, by a preponderance of the evidence, each essential element of a valid defense of illegal contract to Appellee's tortious interference claim. *Tex. Civ. Prac. & Rem. Code* §27.005(d).

Because the contracts and the performance thereof, would have resulted in a willful violation of a statute, namely the *Texas Election Code*, the Court must find that Appellant has established, by a preponderance of the evidence, that the contracts were illegal and Appellant has established the affirmative defense of illegality. Therefore, the Court must dismiss Appellee's lawsuit pursuant to *Texas Civil Practice & Remedies Code* §27.005(d). In connection with the dismissal, the Court should award attorneys' fees and costs to Appellant as set forth in *Texas Civil*

23

*Practice & Remedies Code* § 27.009 or remand the case back to the trial court to make a determination of the proper measure of attorneys' fees and costs to be awarded to Appellant.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Appellant Bob Deuell prays the Court dismiss Appellee's lawsuit pursuant to Appellant's Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code, and award Appellant his appellate costs and remand the case to the trial court for a determination of court costs, reasonable attorney's fees, and other expenses incurred in defending this legal action pursuant to Section 27.009(1) of the Texas Civil Practice & Remedies Code as well as sanctions against Appellee that the trial court may determine would be sufficient to deter Appellee from bringing similar actions in the future pursuant to Section 27.009(2) of the Texas Civil Practice & Remedies Code and for such further relief to which Appellant is justly entitled.

SIGNED on this the 24th day of August, 2015.

Respectfully submitted

**DENTON NAVARRO ROCHA BERNAL HYDE & ZECH, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745-5292
(512) 279-6431
(512) 279-6438 (Facsimile)
george.hyde@rampage-aus.com
scott.tschirhart@rampage-aus.com

By: _____
George E. Hyde
State Bar No. 45006157
Scott M. Tschirhart
State Bar No. 24013655

*ATTORNEYS FOR APPELLANT*
*BOB DEUELL*

## CERTIFICATE OF COMPLIANCE

In compliance with Tex. R. App. P. 9.4(i)(3), this is to certify that the Appellant's Brief contains 5,703 words, which does not include the caption, identity of parties and counsel, statement regarding oral arguments, table of contents, table of authorities, signature, proof of service, certificate of compliance and appendix.

_____
George E. Hyde
Scott M. Tschirhart

25

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individuals as indicated, and according to the Texas Rules of Civil Procedure and/or via electronic notification on this the 24th day of August, 2015:

N. Terry Adams, Jr.                                via electronic notification
**Beirne, Maynard & Parsons, L.L.P.**             tadams@bmpllp.com
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056


Joseph M. Nixon                                    via electronic notification
**Beirne, Maynard & Parsons, L.L.P.**             jnixon@bmpllp.com
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056


James E. "Trey" Trainor, III                       via electronic notification
**Beirne, Maynard & Parsons, L.L.P.**             ttrainor@bmpllp.com
401 W. 15th Street, Suite 845
Austin, Texas 78701

George E. Hyde
Scott M. Tschirhart

NO. 01-15-00617-CV
***
IN THE COURT OF APPEALS
FIRST COURT OF APPEALS DISTRICT
HOUSTON, TEXAS
***
BOB DEUELL,
Appellant,

v.

TEXAS RIGHT TO LIFE COMMITTEE, INC.,
Appellee

On Appeal from the 152nd Judicial District Court
Of Harris County, Texas
Trial Court Cause No. 2014-32179
Honorable Robert Schaffer, Presiding Judge

**APPENDIX TO APPELLANT'S BRIEF**

**DENTON NAVARRO ROCHA BERNAL HYDE & ZECH, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745-5292
(512) 279-6431
(512) 279-6438 (Facsimile)
George E. Hyde
State Bar No. 45006157
Scott M. Tschirhart
State Bar No. 24013655
ATTORNEYS FOR APPELLANT

**ORAL ARGUMENTS REQUESTED**

## APPENDIX

**TRIAL COURT'S DOCUMENTS: Motions and Orders:**

**TAB NO. 1**      [C.R. 380, Vol 1] *Order*, denying Defendant's Motion to Dismiss, issued by Judge Robert K. Schaffer on July 1, 2015.

**TAB NO. 2**      [C.R. 14-66, Vol 1] Defendant's Motion to Dismiss, file-stamped Septmeber 5, 2014.

**TAB NO. 3**      [C.R. 90-98, Vol 1] Plaintiff's Response to Defendant's Chapter 27 Motion to Dismiss, file-stamped Septmeber 24, 2014.

SIGNED on this the 24th day of August, 2015.

Respectfully submitted

**DENTON NAVARRO ROCHA BERNAL HYDE & ZECH, P.C.**
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745-5292
(512) 279-6431
(512) 279-6438 (Facsimile)
george.hyde@rampage-aus.com
scott.tschirhart@rampage-aus.com

By: _____
George E. Hyde
State Bar No. 45006157
Scott M. Tschirhart
State Bar No. 24013655

*ATTORNEYS FOR APPELLANT*
*BOB DEUELL*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individuals as indicated, and according to the Texas Rules of Civil Procedure and/or via electronic notification on this the 24th day of August, 2015:

N. Terry Adams, Jr.                    via electronic notification
**Beirne, Maynard & Parsons, L.L.P.**   tadams@bmpllp.com
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

Joseph M. Nixon                        via electronic notification
**Beirne, Maynard & Parsons, L.L.P.**   jnixon@bmpllp.com
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056

James E. "Trey" Trainor, III           via electronic notification
**Beirne, Maynard & Parsons, L.L.P.**   ttrainor@bmpllp.com
401 W. 15th Street, Suit 845
Austin, Texas 78701

George E. Hyde
Scott M. Tschirhart

**TAB NO. 1**

P1
DISMY

CAUSE NO. 2014-32179

FILED
Chris Daniel
District Clerk

JUL 0 1 2015

Time:_____
Harris County, Texas
_____
Deputy

| | | |
|---|---|---|
| TEXAS RIGHT TO LIFE COMMITTEE, INC. | § § § | IN THE DISTRICT COURT OF |
| v. | § § | HARRIS COUNTY, T E X A S |
| BOB DEUELL | § § | 152nd JUDICIAL DISTRICT |

ORDER

O§n this date came on to be heard Defendants' Motion to Dismiss pursuant to Tex. Civ. Prac. Code §27.003, and this court, after considering the pleadings and arguments of counsel, finds that this motion should be denied.

Signed July 1, 2015.

Robert K. Schaffer
Presiding Judge

380



TAB NO. 2

NO. 2014-32179

| | | |
|---|---|---|
| TEXAS RIGHT TO LIFE COMMITTEE, INC. | § § § | IN THE DISTRICT COURT |
| v. | § § | 152ND JUDICIAL DISTRICT |
| BOB DEUELL | § § | HARRIS COUNTY, TEXAS |

## DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant BOB DEUELL (hereinafter referred to as "Defendant" and/or "DEUELL") and in response to the allegations contained in Plaintiff's Original Petition and files this his Motion to Dismiss and would show the Court as follows:

## I.
## MOTION TO DISMISS

1. Plaintiff's lawsuit is an attempt to unlawfully infringe on Defendant's right to speak on a matter of public concern, in other words a "SLAPP" action (strategic lawsuit against public participation). Defendant respectfully asks the Court to dismiss Plaintiff's lawsuit pursuant to the *Texas Citizen Participation Act* codified at Chapter 27 of the *Texas Civil Practice & Remedies Code*. This Motion is timely filed in that it is filed in less than 60 days after the date of service of Plaintiff's Petition.

2. Defendant additionally asserts this motion to dismiss on the affirmative defenses of judicial privilege and illegal contract.

3. Pursuant to *Texas Civil Practice & Remedies Code* §27.003(c), all discovery in this lawsuit is suspended until the Court has ruled on the motion to dismiss.

14

## II.
## SPEECH ON A MATTER OF PUBLIC CONCERN

4. Plaintiff's lawsuit alleges only one cause of action, that being that Defendant tortuously interfered with Plaintiff's contracts to run certain radio ads with Cumulus Media and Salem Communications. The ads were political attack ads that misrepresented the purpose and effect of certain legislation sponsored by Defendant as a State Senator for the State of Texas. That bill was Senate Bill 303 which was designed to add more protection to human life than the existing *Texas Advance Directives Act of 1999*. The ads in question were aired during the leadup to the Texas Republican Primary runoff election held on May 27, 2014. The ads contained false information about Senate Bill 303 and false and defamatory information regarding Defendant.

5. Plaintiff's ads were also in violation of the Texas Election Code in that they did not contain the disclosures required by *Texas Election Code* 255.001. True and correct copies of the scripts for the ads in question are attached as *Exhibit "A"* and incorporated herein as if set forth fully.

6. In an exercise of Defendant's free speech rights under the First Amendment of the United States Constitution and Section 8, Article 1 of the Bill of Rights contained in the Texas Constitution, Defendant's lawyers, acting on his behalf wrote letters to the broadcasters explaining in detail why the ads in question contained false and defamatory information and did not contain the proper disclosure required by *Texas Election Code* 255.001. These letters also threatened legal action if the ads were not edited to omit the defamatory content and to include the disclosure required by the Texas Election Code. True and correct copies of those letters are attached as *Exhibit "B"* and incorporated herein as if set forth fully. Once the defamatory and misleading language was removed and the ads were edited to include the disclaimer required by

the Texas Election Code, no further action was taken by Defendant relating to these ads. *See Exhibit "C" Affidavit of Scott M. Tschirhart.*

7. A sitting State Senator commenting on legislation he sponsored in the Texas Senate is pure political speech and exactly the kind of free speech that the *Texas Citizen Participation Act* was designed to protect. Such comments were about a matter of public concern (the election contest and the intent and effect of Senate Bill 303) as defined in *Texas Civil Practice & Remedies Code* § 27.001(3). The Court must dismiss Plaintiff's lawsuit if Defendant can prove by a preponderance of the evidence that Plaintiff's lawsuit is based on Defendant's exercise of his right of free speech. *See Texas Civil Practice & Remedies Code* § 27.005(1).

8. Defendant respectfully requests that the Court set a hearing within sixty (60) days of the filing of this Motion and after said hearing, dismiss Plaintiff's lawsuit and award to Defendant court costs, reasonable attorneys' fees, and all other expenses incurred in defending this action. The Court must also award sanctions against Plaintiff in an amount that the Court finds sufficient to deter Plaintiff from bringing similar actions.

## III.
## AFFIRMATIVE DEFENSES

9. *Texas Civil Practice & Remedies Code* §27.005(d) requires the Court to dismiss this action if Defendant can establish, by a preponderance of the evidence, each element of a valid defense to Plaintiff's tortious interference claim:

**Judicial Privilege**

8. Defendant asserts the affirmative defense of judicial privilege and asks the Court to dismiss Plaintiff's lawsuit because the communications Plaintiff complains of were made by Defendant's lawyer and are judicially privileged communications.

16

9. The Texas Supreme Court described the judicial privilege in this manner: "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case." *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). The Court later expanded the scope of the privilege beyond slander and libel. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771-72 (Tex. 1994) (extending the absolute privilege to pretrial proceedings and statements defeating the plaintiff's negligence claim where plaintiff's damages were basically defamation damages.) "Although most cases addressing the judicial communications privilege involve claims of libel or slander, Texas courts have consistently applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim." *Laub v. Pesikoff*, 979 S.W.2d 686, 690 (Tex. App.—Houston [1st Dist.] 1998 pet. denied). The judicial immunity recognized in *Bird* is not limited only to claims styled as defamation claims, but instead extends to "claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim." *Crain v. Unauthorized Practice of Law Comm.*, 11S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

10. It is well established under Texas law that letters written by attorneys in anticipation of litigation are absolutely privileged. *See Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. App-Dallas 1981, writ ref'd n.r.e.) "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he

17

participation as counsel, that has some relation to the proceeding." Id.(emphasis added); see also Watson v. Kaminski, 51 S.W.3d 825, 827-28 (Tex. App—Houston [1st Dist] 2001, no pet)(holding that an attorney's letter alleging that a prisoner was trying to extort money from appellant and that he was likely to be sued (The litigation) to done-some within the judicial privilege even though no litigation was pending); Krishnan v. Law Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 301-03 (Tex. App—Corpus Christi 2002, pet. denied)(finding that an attorney's letters sent to a doctor to give notice of a negligence claim [under 4590i] and to request records, even though suit was never actually filed, were made in contemplation of judicial proceeding and were therefore privileged); Chu v. Smith, 22 S.W.3d 58, 62-63 (Tex. App—Corpus Christi 2008, no pet). Even if the potential litigant later decide not to file suit, "[t]here is no requirement that a person actually get sued for the privilege to apply; only that the statements are related to a contemplated judicial proceeding." Krishnan, 83 S.W.3d at 302-03.

Whether a lawyer's out-of-court statement is related to a proposed or existing judicial proceeding is a question of law to be determined by the court. When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding." All doubt should be resolved in favor of the relevancy of the statement.

Dallas Ind. Sch. Dist. v. Finlan, 27 S.W.3d 220, 239 (Tex. App—Dallas 2000, pet. denied)(quoting Russell); Bayou Residential, Inc. v. Redimer, 156 S.W.3d 24, 28 (Tex. App—Houston [1st Dist] 2004, writ denied)(finding that statements made by a lawyer to a newspaper in contemplation of and preliminary to filing suit were absolutely privileged).

11. The absolute judicial privilege applies to tortious interference with contract claims. See Griffin v. Rowden, 702 S.W.2d 692, 695 (Tex. App—Dallas 1985, writ ref'd n.r.e)(holding that the filing of a lis pendens was absolutely privileged in an action for tortious interference with contract); Crain v. Unauthorized Practice of Law Committee, 11 S.W.3d 328, 335 (Tex. App—

DEFOMH

Houston [1st Dist.], 1999 pet denied)(concluding that prior testimony by a witness was subject to the affirmative defense of absolute immunity to a claim of tortious interference).

12. In the present case, the communications complained of were demand letters sent to radio stations. *See Exhibit B.* Each of these letters was sent by Scott Fredrichart, an attorney representing Senator Deuell. *See id.* Each of these letters specifically warn of anticipated litigation. The letters contain statements like:

> **If your company does not immediately cease the broadcast of the illegal advertisements purchased by the Houston-based Texas Right to Life Committee, Inc., Senator Deuell will exercise his right to injunctive relief in court to prevent the continuing harm.**

*Id.* These letters request if the recipient will accept service of process or whether suit must be served on their registered agents. *See id.* These letters contain notices of litigation hold and preservation demands. *See id.* Finally, these letters include admonitions for the recipients to contact their legal counsel immediately. *See id.*

13. It is a question of law for the Court must decide whether the statements made in the letters are related to a proposed or existing judicial proceeding. The Court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding. All doubt should be resolved in favor of the relevancy of the statement.

14. Because the letters are clearly demands to cease and desist running illegal and defamatory radio ads, and clearly show that litigation was anticipated, the Court must find that Defendant has established that the statements in these letters bear some relation to a proposed judicial proceeding. Therefore, the letters are judicially privileged. The Court must dismiss Plaintiff's lawsuit pursuant to *Texas Civil Practice & Remedies Code* §27.003(d).

15. Pursuant to *Texas Civil Practice & Remedies Code* §27.009, the Court must award Defendant court costs, reasonable attorneys' fees, and other expenses incurred in defending against Plaintiff's lawsuit. The Court must also award sanctions against Plaintiff in an amount that the Court finds sufficient to deter Plaintiff from bringing similar actions.

**Illegal Contract**

16. Defendant asserts the affirmative defense of illegality and asks the Court to dismiss Plaintiff's lawsuit because the contract that Defendant is accused of tortuously interfering with was illegal and thus void.

17. A defendant cannot be held liable for tortious interference with a contract that is unenforceable because it is illegal. *See Flynn Bros. v. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App.—Dallas 1986, writ ref'd. n.r.e.). A contract is illegal if the contract or its performance will result in a willful violation of a constitution, statute or ordinance. *GNG Gas Systems v. Dean*, 921 S.W.2d 421, 422 (Tex. App.—Amarillo 1996 writ denied); *Anczar v. Chospi*, 319 S.W.2d 742, 743 (Tex. App.—San Antonio 1958, writ ref'd n.r.e.). "A contract to do a thing which cannot be performed without a violation of the law is void." *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947).

18. In this case, the contracts called for the radio stations to run political advertisements that violated *Texas Election Code* 255.001. *Texas Election Code* 255.001 prohibits a person—including a corporate entity—from broadcasting political advertising containing express advocacy that does not indicate in the advertising the following: (1) that it is political advertising; and (2) the full name of the person who paid for the political advertising. These advertisements ended with "Proudly paid by Texas Right to Life." *See Exhibit "A."* The scripts of the advertisements do not contain an acknowledgement that they are, in fact, "political

advertising." *See Id.* Therefore, the contracts and the performance thereof, would have resulted in a willful violation of a statute, the *Texas Election Code*. After the letters dated May 19, 2014 (which specifically complained about the violation of the Texas Election Code) were sent, the scripts of the advertisements were changed to include language that complied with the *Texas Election Code* and no further letters were sent to the radio stations. *See Affidavit of Scott M. Eichelbart.*

19. Because the contracts and the performance thereof, would have resulted in a willful violation of a statute, namely the *Texas Election Code*, the Court must find that Defendant has established, by a preponderance of the evidence, that the contracts were illegal and Defendant has established the affirmative defense of illegality. Therefore, the Court must dismiss Plaintiff's lawsuit pursuant to *Texas Civil Practice & Remedies Code* §27.005(d).

20. Pursuant to *Texas Civil Practice & Remedies Code* §27.009, the Court must award Defendant court costs, reasonable attorneys' fees, and other expenses incurred in defending against Plaintiff's lawsuit. The Court must also award sanctions against Plaintiff that the Court finds sufficient to deter Plaintiff from bringing similar actions.

## IV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant BOB DEUELL prays that the Court set a hearing within sixty (60) days of the filing of this Motion and after said hearing, dismiss Plaintiff's lawsuit and award to Defendant court costs, reasonable attorneys' fees, and all other expenses incurred in defending this action, that the Court award sanctions against Plaintiff in an amount the Court finds sufficient to deter Plaintiff from bringing similar actions, and for such further relief, at law or in equity, general or special, to which Defendant may show himself justly entitled.

21

Signed on this the 5th day of September, 2014.

Respectfully submitted,

Denton Navarro Rocha Bernal Hyde & Zech, P.C.
attorneys & counselors at law • rampagelaw.com
A Professional Corporation
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)
george.hyde@rampage-aus.com
scott.tschirhart@rampage-aus.com

By: _____
GEORGE E. HYDE
State Bar No. 45006157
SCOTT M. TSCHIRHART
State Bar No. 24013655

*Counsel for Defendant,*
*Bob Deuell*

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 5th of September, 2014, I conferred with Plaintiff's counsel about the merits of the filing of this motion and counsel was opposed.

_____
SCOTT M. TSCHIRHART

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) as indicated, and according to the Texas Rules of Civil Procedure on the 5th day of September, 2014.

James E. "Trey" Trainor, III  
BEIRNE, MAYNARD & PARSON, L.L.P.  
401 W. 15th Street, Suite 845  
Austin, TX 78701

CMRRR #7012 2210 0000 0095 9233  
and/or Electronic Notification

Joseph M. Nixon  
BEIRNE, MAYNARD & PARSON, L.L.P.  
1300 Post Oak Blvd., 25th Floor  
Houston, TX 77056-3000

CMRRR #7012 2210 0000 0095 9226  
and/or Electronic Notification

GEORGE E. HYDE  
SCOTT M. TSCHIRHART

23

# Script of Texas Right to Life Radio Ad
## Falsely Attacking St Sen Bob Deuell, MD

*Before you trust Bob Deuell to protect life, please listen carefully. If your loved one is in the hospital, you may be shocked to learn that a faceless hospital panel can deny life- sustaining care...giving you only 10 days to find another facility for your mother, dad, or young child even if the patient is conscious. Your civil liberties and your right to life should not go away once you are in the hospital. This actually happens to families across Texas, and Bob Deuel sponsored a bill to give even more power to these hospital panels over life and death for our ailing family members. Bob Deuell turned his back on life and on disabled patients. Don't trust him to protect you if you are sick. Vote pro life. Vote for Bob Hall in the runoff election for State Senate. Early voting for Bob Hall is May 19th through May 23rd. Election day is May 27th. Bob Hall will stand for all.*

*Proudly paid for by Texas Right to Life.*



# Texas Right to Life Radio Ad

*Before you trust Bob Deuell to protect life, please listen carefully. If your loved one is in the hospital, you may be shocked to learn that a faceless hospital panel can deny life- sustaining care...giving you only 10 days to find another facility for your mother, dad, or young child even if the patient is conscious. Your civil liberties and your right to life should not go away once you are in the hospital. This actually happens to families across Texas, and Bob Deuel sponsored a bill to give even more power to these hospital panels over life and death for our ailing family members. Bob Deuell turned his back on life and on disabled patients. Don't trust him to protect you if you are sick. Vote pro life. Vote for Bob Hall in the runoff election for State Senate. Early voting for Bob Hall is May 19th through May 23rd. Election day is May 27th. Bob Hall will stand for all.*

*Proudly paid for by Texas Right to Life.*

25

# Script of Texas Right to Life Radio Ad #2

Started running Friday May 16th on KSKY, KWRD and KLTY
(Salem Media radio stations)

*Have you heard the news? Have you heard the big story about what Bob Deuell is trying to do? You see Bob Deuell is attempting to silence Texas Right to Life because they're telling you about his voting reord. Deuell is even threatening a lawsuit. Well he can send a slew of lawyers and truckload of inflammatory letters but Texas Right to Life will never, and I mean never, be silenced when speaking for the voiceless. That's why on May 27th elect Bob Hall. You see with Bob Hall the voters of Senate District 2 can elect a strong prolife legislator who is not going to hide from voters. And he will proudly represent the prolife views of Senate District 2. So vote for the right Bob. Vote for Bob Hall on May 27th. Early voting is May 19th to May 23rd. Proudly paid for by Texas Right to Life.*



San Antonio | Austin | Rio Grande Valley

2500 W. William Cannon, Suite 609 | Austin, Texas 78745-5330
V 512.227.6431 | F 512.279.6436

May 14, 2014

Dan Bennett                                      **VIA E-MAIL:** dan_bennett@cumulus.com
Vice President/Market Manager
Cumulus Media
3090 Olive Street
Dallas, Texas 75219

RE:   Notice – Cease & Desist Demand Letter

RE: Publication of Defamatory Advertisement – Airing Non-use Texas Right to
Life PAC Defamatory Ad attacking the Honorable Texas State Senator Bob
Deuell

Anticipated Litigation, Preservation Notice & Demand Letter

Dear Mr. Bennett:

## PLEASE IMMEDIATELY CEASE & DESIST ANY FORM OF PUBLICATION OR REPUBLICATION OF THE ABOVE & BELOW REFERENCED ADVERTISEMENT

We represent the Honorable Texas State Senator Bob Deuell, and we have
become aware of defamatory advertisements published in certain media outlets which
were airing and re-airing a non-use campaign ad by Texas Right to Life PAC (not a
candidate ad).

These false and defamatory statements completely and totally misrepresent
Senator (and Medical Doctor) Deuell's position on Patient Protection and End of Life
Legislation and completely and totally misrepresents Senate Bill 303. Specific FALSE
content of this ad includes the following:

Defamation: - "Bob Deuell sponsored a bill to give even more power to these hospital
panels over life and death for our ailing family members. Bob Deuell turned his back on
life and on disabled patients."

TRUTH: Senator Deuell's bill, Senate Bill 303, is endorsed by the Texas Catholic
Conference, The Public Policy Voice of the Catholic Bishops of Texas. A true and
correct copy of their statement on the matter is attached as Exhibit A and it illustrates

Serving all of Texas from  Rio Grande Valley offices

EXHIBIT

B

27

Just how false and defamatory the Texas Right to Life PAC radio ad is. Senate Bill 303 was designed to **add more protection for human life** than the existing Texas Advance Directives Act of 1999 (which was supported by Texas Right to Life PAC).

The reforms in Senator Deuell's Bill address a number of principles, including:

• Improving notification and appeal processes for families or surrogates when a Do-Not-Resuscitate Order is used;

• Ensuring that artificially administered nutrition and hydration cannot be withdrawn from a patient, unless continuing to provide that treatment would harm the patient;

• Ensuring the process is applied only to patients for whom life-sustaining treatment would be medically inappropriate and ineffective, and are difficult for the patient to endure;

• Respecting the conscience of physicians and other health care providers so the law does not require them to provide unethical treatment;

• Extending the notification time to a family or surrogate from 48 hours to seven days in advance of an ethics committee meeting;

• Extending the time to find an alternative willing provider from 10 to 14 days;

• Providing the family or surrogate with a patient liaison to help guide them through the process;

• Providing the family or surrogate with a free copy of the patient's medical record;

• Inviting the family or surrogate to attend the ethics committee meeting at which future care for their loved one will be discussed; and,

• Creating reporting requirements for hospitals or hospital systems that have one or more ethics committee meetings on the process outlined in the bill.

These provisions show that the false and defamatory statements made in Texas Right to Life PAC's radio ad totally and completely misrepresent Senator and Dr. Deuell's position and Senate Bill 303. Additionally, the following groups and individuals will corroborate the false and slanderous nature of the Texas Right to Life PAC's radio ad:

Texas Conference of Catholic Bishops
Christian Life Commission of the Southern Baptist Convention
Texas Alliance for Life (Joe Pojman, PhD (512) 477-1244)

# Exhibit A

28

Dan Bennett
Notice – Cease & Desist Demand Letter
May 14, 2014
# 1 Page

The Coalition of Texans with Disabilities
The Texas Medical Association (Troy Alexander (512) 370-1360)

If your station has been running this ad, you are hereby put on notice of the false and defamatory statements contained therein. Any further publication of this ad will shift your conduct from reckless disregard to intentional and actual malice. "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). We will be happy to provide additional backup documentation upon request.

**THEREFORE, WE RESPECTFULLY DEMAND THAT YOU IMMEDIATELY CEASE AND DESIST FROM INTENTIONALLY DEFAMING TEXAS STATE SENATOR BOB DEUELL BY REPUBLISHING THESE FASLE AND DEFAMATORY STATEMENTS BY RE-AIRING THE ADVERTISEMENT, AS OUTLINED.**

**LITIGATION HOLD & PRESERVATION DEMAND**

You are hereby on notice and should have reason to believe that litigation may result from the claims described above. This letter does not mean that you will be sued, or that this matter may not be resolved without court intervention; however, pursuant to state and federal law, you are now under a legal duty to preserve all evidence, whether printed or electronic that might become relevant to this matter. Some of this information may be in your possession or control, or in the possession of any and all agents, employees or third-parties under your control. You have a legal duty to preserve that information. The purpose of this letter is to explain to you what that obligation means. Should a claim be made, the lack of documentation that should have been preserved may lead to a presumption that the lack of documentation was an intentional attempt to conceal damaging evidence to your case – an issue described as spoliation.

Information subject to this hold demand may be located anywhere and by anyone connected to this matter. You are required to take the following steps immediately to protect and preserve any of that information that is in your possession or under your control until further notice.

Specifically, you will need to do the following immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this dispute that is under your control. That includes electronic information wherever it is stored – at your work station, on a laptop, or at home. It includes all forms of electronic communication – e.g., e-mail, word processing, calendars, voice messages, videos, photographs, information in your smart

**Exhibit A**

phone. This electronic information must be preserved so that it can be retrieved at a later time.

2. The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication. Your IT department may be able to assist you with the preservation of electronic information on the server and on back-up tapes.

3. Similarly, preserve any new electronic information that is generated after you receive this letter that is relevant to this dispute or may lead to the discovery of relevant information related to this dispute.

4. Preserve any "hard copy" information under your control.

## CONTACT YOUR LEGAL ADVISOR IMMEDIATELY.

While we are hopeful that this matter can be resolved quickly and without substantial investment of further valuable time and expense by any party, your immediate attention to this matter is necessary and appreciated. We would like to thank you in advance for any consideration you lend to this matter, and look forward to resolution.

Very truly yours,

Denton Navarro Rocha Bernal Hyde & Zech, P.C.

GEORGE E. HYDE
ROSS FISCHER
SCOTT M. TSCHIRHART

GEH/RF/SMT/ha

H:\MASTERS\NEW CASES\HC\U WRAP 5\Zachry, Ind. Dispute\Bennett and Davis (14) CCH.docx

## Exhibit A

30



# TEXAS CATHOLIC CONFERENCE

THE PUBLIC POLICY VOICE OF THE CATHOLIC BISHOPS OF TEXAS

Join the Texas Catholic Network



## Texas Bishops Endorse SB 303 To Improve End-Of-Life Care



EXHIBIT A

31



**Exhibit A**



San Antonio | Austin | Rio Grande Valley

[illegible address line]
[illegible phone/fax line]

May 14, 2014

John Peroyea                          VIA E-MAIL: john.peroyea@klty.com
Director of Operations
Salem Communications Dallas
6400 N. Belt Line Rd.
Suite 110
Irving, Texas 75063

RE:   Notice – Cease & Desist Demand Letter

      RE: Publication of Defamatory Advertisement – Airing Non-use Texas Right to
      Life PAC Defamatory Ad attacking the Honorable Texas State Senator Bob
      Deuell

      Anticipated Litigation, Preservation Notice & Demand Letter

Dear Mr. Peroyea:

## PLEASE IMMEDIATELY CEASE & DESIST ANY FORM OF PUBLICATION OR REPUBLICATION OF THE ABOVE & BELOW REFERENCED ADVERTISEMENT

We represent the Honorable Texas State Senator Bob Deuell, and we have become aware of defamatory advertisements published in certain media outlets which were airing and re-airing a non-use campaign ad by Texas Right to Life PAC (not a candidate ad).

These false and defamatory statements completely and totally misrepresent Senator (and Medical Doctor) Deuell's position on Patient Protection and End of Life Legislation and completely and totally misrepresents Senate Bill 303. Moreover these statements specifically violate the Biblical admonitions against bearing false witness.

Specific FALSE content of this ad includes the following:

Defamation – "Bob Deuell sponsored a bill to give even more power to these hospital panels over life and death for our ailing family members. Bob Deuell turned his back on life and on disabled patients."

33

Dan Barrett
Notice – Cease & Desist Demand Letter
May 14, 2014
2 | Page

TRUTH: Senator Deuell's bill, Senate Bill 303, is endorsed by the Texas Catholic Conference, The Public Policy Voice of the Catholic Bishops of Texas. A true and correct copy of their statement on the matter is attached as Exhibit A and is illustrates just how false and defamatory the Texas Right to Life PAC ads are. Senate Bill 303 was designed to add more protection for human life than the existing Texas Advance Directives Act of 1999 (which was supported by Texas Right to Life PAC).

The reforms in Senator Deuell's Bill address a number of principles, including:

• Improving notification and appeal processes for families or surrogates when a Do-Not-Resuscitate Order is used;

• Ensuring that artificially administered nutrition and hydration cannot be withdrawn from a patient, unless continuing to provide that treatment would harm the patient;

• Ensuring the process is applied only to patients for whom life-sustaining treatment would be medically inappropriate and ineffective, and are difficult for the patient to endure;

• Respecting the conscience of physicians and other health care providers so the law does not require them to provide unethical treatment;

• Extending the notification time to a family or surrogate from 48 hours to seven days in advance of an ethics committee meeting;

• Extending the time to find an alternative willing provider from 10 to 14 days;

• Providing the family or surrogate with a patient liaison to help guide them through the process;

• Providing the family or surrogate with a free copy of the patient's medical record;

• Inviting the family or surrogate to attend the ethics committee meeting at which future care for their loved one will be discussed; and,

• Creating reporting requirements for hospitals or hospital systems that have each of more ethics committee meetings so that the process outlined in the bill.

These provisions show that the false and defamatory statements made in Texas Right to Life PAC's radio ad totally and completely misrepresent Senator and Dr. Deuell's position and Senate Bill 303. Additionally, the following groups and individuals will corroborate the false and slanderous nature of the Texas Right to Life PAC's radio ads:

34

Texas Conference of Catholic Bishops
Christian Life Commission of the Southern Baptist Convention
Texas Alliance for Life (Joe Pojman, PhD (512) 477-1244)
The Coalition of Texans with Disabilities
The Texas Medical Association (Troy Alexander (512) 370-1360)

If your station has been running this ad, you are hereby put on notice of the false and defamatory statements contained therein. Any further publication of this ad will shift your conduct from reckless disregard to intentional and actual malice. "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). We will be happy to provide additional backup documentation upon request.

**THEREFORE, WE RESPECTFULLY DEMAND THAT YOU IMMEDIATELY CEASE AND DESIST FROM INTENTIONALLY DEFAMING TEXAS STATE SENATOR BOB DEUELL BY REPUBLISHING THESE FALSE AND DEFAMATORY STATEMENTS BY RE-AIRING THE ADVERTISEMENT, AS OUTLINED.**

## LITIGATION HOLD & PRESERVATION DEMAND

You are hereby on notice and should have reason to believe that litigation may result from the claims described above. This letter does not mean that you will be sued, or that this matter may not be resolved without court intervention; however, pursuant to state and federal law, you are now under a legal duty to preserve all evidence, whether printed or electronic that might become relevant to this matter. Some of this information may be in your possession or control, or in the possession of any and all agents, employees or third-parties under your control. You have a legal duty to preserve that information. The purpose of this letter is to explain to you what that obligation means. Should a claim be made, the lack of documentation that should have been preserved may lead to a presumption that the lack of documentation was an intentional attempt to conceal damaging evidence to your case — an issue described as spoliation.

Information subject to this hold demand may be located anywhere and by anyone connected to this matter. You are required to take the following steps immediately to protect and preserve any of that information that is in your possession or under your control until further notice.

Specifically, you will need to do the following immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this dispute that is under your control. This includes electronic information wherever it is stored — at your work station, on a laptop, or at home.

35

It includes all forms of electronic communication – e.g. e-mail, word processing, calendars, voice messages, videos, photographs, information in your smart phone. This electronic information must be preserved so that it can be retrieved at a later time.

2. The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication. Your IT department may be able to assist you with the preservation of electronic information on the server and on back up tapes.

3. Similarly, preserve any new electronic information that is generated after you receive this letter that is relevant to this dispute or may lead to the discovery of relevant information related to this dispute.

4. Preserve any "hard copy" information under your control.

**CONTACT YOUR LEGAL ADVISOR IMMEDIATELY.**

While we are hopeful that this matter can be resolved quickly and without substantial investment of further valuable time and expense by any party, your immediate attention to this matter is necessary and appreciated. We would like to thank you in advance for any consideration you lend to this matter, and look forward to resolution.

Very truly yours,

Denton Navarro Rocha Bernal Hyde & Zech, P.C.

GEORGE E. HYDE
ROSS FISCHER
SCOTT M. TSCHIRHART

GEH/RF/SMT/ns



# TEXAS CATHOLIC CONFERENCE



Join the Texas Catholic Network

## Texas Bishops Endorse SB 303 To Improve End-Of-Life Care



EXHIBIT
A

37

5/14/2014

PARISHES   BISHOPS   MARRIAGE   PICKING   SITE MAP   CONTACT   PRIVACY   USCCB   VATICAN



EXHIBIT
A

SKM_2014
38

39

# DNRBH

San Antonio / Austin / Rio Grande Valley

May 19, 2014

VIA E-MAIL: Nicole.Waller@...

Nicole Waller
Attorney for Clear Channel Media Dallas/Fort Worth
3090 Olive Street
West Victory Plaza
Suite 400
Dallas, Texas 75219

RE: Honorable Robert "Bob" Deuell, Cease and Desist Illegal Radio Ads.

Dear Ms. Waller:

As you know from our previous communications, we represent the Honorable Robert "Bob" Deuell, a member of the Texas Senate. It has come to our attention that your station are broadcasting political advertising that violates Texas Election Code 255.001. If these illegal advertisements are not immediately removed from the air, my client will pursue the injunctive relief afforded to him by Election Code 273.081.

Your stations are currently broadcasting political advertisements purchased by the Houston-based Texas Right to Life Committee, Inc. which fail to comply with Texas Election law. Specifically, Texas Election Code 255.001 prohibits a person — including a corporate entity — from broadcasting political advertising containing express advocacy that does not indicate in the advertising the following: (1) that it is political advertising and (2) the full name of the person who paid for the political advertising.

Your stations are running advertisements adversely by admonishing the listener to vote for candidate Bob Hall for Texas Senate. However, these advertisements fail to include the statutorily required political disclaimer. These advertisements end with "Proudly paid by Texas Right to Life." This statement does not include an acknowledgement that it is, in fact, "political advertising." Therefore, these advertisements are in clear violation of Election Code 255.001.

Additionally, the advertisement at issue fails to state that it was paid for by the Houston-based corporate entity Texas Right to Life Committee, Inc. Consider the previously explained that these ads were purchased by this Houston-based corporation, and not by a political action committee. In fact, in a letter dated May 14, 2014, counsel for the Houston-based Texas Right to Life Committee, Inc. stated that the ads at issue were "bought by Texas Right to Life Committee, Inc., a Texas nonprofit corporation with 501(c)(4) status with the Internal Revenue

Serving all of Texas from our San Antonio, Austin and Rio Grande Valley offices

Service." This fact is further supported by the very language of the purchase contracts with your company. These advertisements are in clear violation of Election Code 255.001.

Also, it is important to note that this type of 501(c)(4) corporation is funded by "dark money," meaning that the advertisements we are broadcasting are funded by one or more donors to a 501(c)(4) corporation and this "dark money" funded corporation is obscuring the true source of the communication (yet another Election Code violation). Could these advertisements actually be secretly funded by the same personal injury trial lawyers who worked with Texas Right to Life to attack Governor Perry's medical liability tort reform Constitutional amendment (Proposition 12 in 2003)? Or secretly funded by a Midland-based "dark money" group currently under investigation by the Texas Ethics Commission? Are these illegal advertisements being secretly funded by Houston special interests intent on controlling natural resources, including water, vital to the residents of Senate District 21? Though the public may not know who these "dark money" contributors are, Texas law, specifically the Texas Election Code, requires that the true source of the funding for these radio ads be properly identified in the ads.

Fortunately, the Election Code provides Senator Deuell with recourse for this illegal behavior. Texas Election Code 273.081 ("Injunction") reads:

A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.

Your company is clearly harming Senator Deuell by broadcasting political advertising without the legally required political disclaimer and by failing to properly identify the party paying for these ads. Consequently, your company is the proper defendant in any suit for injunctive relief.

If your company does not immediately cease the broadcast of the illegal advertisements purchased by the Houston-based Texas Right to Life Committee, Inc., Senator Deuell will exercise his right to injunctive relief in court to prevent the continuing harm.

Please advise if you will accept service of the injunction on behalf of your client or if we need to serve Gentulos's registered agent for service in the event that the broadcast of these illegal advertisements is not immediately ceased.

If you have any questions or wish to discuss this matter, please contact us at our firm's Austin office.

40

Very truly yours,

Denton Navarro Rocha Bernel Hyde & Zech, PC
attorneys & counselors at law : rampagelaw.com

ROSS FISCHER
SCOTT M. TSCHIRHART

RF/SMT/kmw

R:\MATTERS\NEW CASES\Bob Bruel\Drafts\Deuel Demand letter to Cumston 2014 0518.docx



May 19, 2014

Bob Mesrop
Vice President, Senior Counsel
Salem Communications Corporation
4880 Santa Rosa Road
Camarillo, California 93012

VIA E-MAIL: BobM@salem.cc
AND FACSIMILE: (805) 364-4505

RE: Honorable Robert "Bob" Deuell, Cease and Desist Illegal Radio Adds.

Dear Mr. Mesrop:

As you know from our previous communications, we represent the Honorable Robert "Bob" Deuell, a member of the Texas Senate. It has come to our attention that your stations are broadcasting political advertising that violates Texas Election Code 255.001. If these illegal advertisements are not immediately removed from the air, our client will pursue the injunctive relief afforded to him by Election Code 273.081.

Your stations are currently broadcasting political advertisements purchased by the Houston-based Texas Right to Life Committee, Inc, which fail to comply with Texas Election law. Specifically, Texas Election Code 255.001 prohibits a person – including a corporate entity – from broadcasting political advertising containing express advocacy that does not indicate in the advertising the following: (1) that it is political advertising; and (2) the full name of the person who paid for the political advertising.

Your stations are running advertising purchased by the Texas Right to Life Committee, Inc. which include express advocacy by admonishing the listener to vote for candidate Bob Hall for Texas Senate. However, these advertisements fail to include the statutorily required political disclaimer. These advertisements end with "Proudly paid by Texas Right to Life." This statement does not include an acknowledgement that it is, in fact, "political advertising." Therefore, these advertisements are in clear violation of Election Code 255.001.

Additionally, the advertisement at issue fails to state that it was paid for by the Houston-based corporate entity Texas Right to Life Committee, Inc. Salem has previously confirmed that these ads were purchased by this Houston-based 501(c)(4) corporation, and not by a political action committee. Therefore, these advertisements are in clear violation of Election Code 255.001.

Serving all of Texas from our San Antonio, Austin and Rio Grande Valley offices

42

Also, it is important to note that this type of 501(c)(4) corporation is funded by "dark money," meaning that the ads your stations are broadcasting are funded by secret contributors to a 501(c)(4) corporation and this "dark money" funded corporation is obscuring the true source of the communication (yet another Election Code violation). Could these advertisements actually be secretly funded by the same personal injury trial lawyers who worked with Texas Right to Life to attack Governor Perry's medical liability tort reform Constitutional amendment (Proposition 12 in 2003)? Or secretly funded by a Midland-based "dark money" group currently under investigation by the Texas Ethics Commission? Are these illegal advertisements being secretly funded by Houston special interests intent on controlling natural resources, including water, vital to the residents of Senate District 28? Though the public may not know who these "dark money" contributors are, Texas law, specifically the Texas Election Code, requires that the true source of the funding for these radio ads be properly identified in the ads.

Fortunately, the Election Code provides Senator Deuell with recourse for this illegal behavior. Texas Election Code 273.081 ("Injunction") reads:

A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.

Your company is clearly harming Senator Deuell by broadcasting political advertising without the legally required political disclaimer and by failing to properly identify the party paying for these ads. Consequently, your company is the proper defendant in any suit for injunctive relief.

If your company does not immediately cease the broadcast of the illegal advertisements purchased by the Houston-based Texas Right to Life Committee, Inc., Senator Deuell will exercise his right to injunctive relief in court to prevent the continuing harm.

Please advise if you will accept service of the injunction on behalf of your client or if we need to serve Salem's registered agent for service in the event that the broadcast of these illegal advertisements is not immediately ceased.

If you have any questions or wish to discuss this matter, please contact us at our firm's Austin office.

43

Bob Mesirow
May 19, 2014
3 | page

Very truly yours,

Denton Navarro Rocha Bernal Hyde & Zech, P.C.

ROSS FISCHER
SCOTT M. TSCHIRHART

RF/SM/Tkmw

K:\MATTERS\Fischer\CASTRO\Dave Dave\D\...\Demand letter to Schulz 2014 (2).docx

44



May 16, 2014

Dan Bennett                    VIA E-MAIL: dan.bennett@cumulus.com
Vice President/Market Manager
Cumulus Media
3090 Olive Street
West Victory Plaza, Suite 400
Dallas, Texas 75219

RE:    Publication of Defamatory Advertisement – Airing Non-use Texas Right to Life
       Defamatory Ad attacking the Honorable Texas State Senator Bob Deuell

Dear Mr. Bennett:

I think Cumulus should carefully consider that this is a non-use ad. It does not enjoy the same protection from defamation claims that a candidate's ad would under the FCC rules.

http://www.dwt.com/files/uploads/documents/advisories/12-07_Political_Broadcasting(Guide).pdf

From "Political Broadcasting: Answering Your Questions on the FCC Rules and Policies":

No Censorship and Third-Party Ads—What Responsibility Do Stations Have for the Content of Political Spots

Once a legally qualified candidate has bought time on a station for a "use" (an ad by his campaign containing the candidate's voice or picture), a broadcaster cannot censor the candidate's message. Because a broadcaster cannot censor the message a candidate presents, the station has no liability for the contents of the ads.

Third-party ads, such as attack ads bought by various interest groups or political parties, are not subject to the "no censorship" provisions of the rules. Thus, a station can choose whether or not to run an ad by a third party and, because it can reject these ads based on their content, the

station does not have a shield against liability. Questions below explore these topics.

***

**What if I get a complaint about the content of a political ad that is bought by a group other than a candidate's campaign committee? Can I refuse the ad based on its contents?**

The "no censorship" rules apply only to ads by candidates and their authorized campaign committees. Thus, the sale by the stations of an ad to a third-party group is purely voluntary. If you get a complaint about a third-party ad, you can pull that ad. In fact, you do not need to run any third-party ads if you do not want to.

**Can I have liability for running an attack ad from a third-party group?**

Yes. Because a station has the right to decide whether or not it will run an ad, it can be held liable for the content of that ad. If an ad contains an attack on a candidate that the station knows to be false, or the station is told that the ad is false and the station continues to broadcast the ad and does nothing to investigate whether the ad is in fact false, liability to the station could arise if the claims are in fact false.

**How do I know whether or not a third-party ad is true or not?**

The station must do a reasonable review of an ad—especially if the truth of the ad has been challenged. If you receive a challenge to the truth of a third-party ad, ask the committee or organization that is sponsoring the ad for information backing up its claims. Review that information for accuracy and reliability, and check with counsel to assess the sufficiency of the backing material to avoid liability for defamation or other torts. It is best to stop running the ad while doing this investigation.

We have demonstrated that the ad contains false and defamatory statements. An untrue statement does not become acceptable simply because a lawyer says that it is now an opinion. This ad misrepresents what Senate Bill 303 does. Senate Bill 303 sought to provide more protection for seriously ill people and their families.

It is easy for Texas Right To Life to mischaracterize clearly defamatory statements as opinions when doing so may result in liability only for Cuculus.

A broadcaster cannot refuse or edit a candidate's ad and therefore cannot be held liable for defamatory content. But a broadcaster can refuse to run a non-use ad like this one. Therefore, a broadcaster is responsible when put on notice of the defamatory nature of the ad.

Dan Bennett
May 16, 2014
3 | Page

Senator Deuell intends to hold Cumulus responsible for the continued publication of this non-use material. Don't let Texas Right To Life's cavalier attitude toward the truth subject Cumulus to liability.

Please carefully reconsider your position.

Very truly yours,

Denton Navarro Rocha Bernal Hyde & Zech, P.C.

GEORGE E. HYDE
ROSS FISCHER
SCOTT M. TSCHIRHART

B:\MATTERS\Sub Dou\Ltr 2 to Bennett for Sen. Deuell\2014 05 16.docx

47



Joel Androphy | Austin | Rio Grande Valley
2180 N. Stetson Ave. Suite 4271 | Austin, Texas 78701 (T/F)
www.dnrbhz.com

May 29, 2014

VIA E-MAIL: bob.alsenp@
AND FACSIMILE: (805) 384-3505

Bob Alsenp
Vice President, Senior Counsel
Salem Communications Corporation
4880 Santa Rosa Road
Camarillo, California 93012

RE: Honorable Robert "Bob" Deuell, Cease and Desist Illegal Radio Ads

Dear Mr. Alsenp:

As you know from our previous communications, we represent the Honorable Robert "Bob" Deuell, a member of the Texas Senate. It has come to our attention that your stations are broadcasting political advertising that violates Texas Election Code 255.001. If these illegal advertisements are not immediately removed from the air, our client will pursue the injunctive relief afforded to him by Election Code 273.081.

Your stations are currently broadcasting political advertisement purchased by the Houston-based Texas Right to Life Committee, Inc. which fail to comply with Texas Election law. Specifically, Texas Election Code 255.001 prohibits a person — including a corporate entity — from broadcasting political advertising containing express advocacy that does not indicate in the advertising the following: (1) that it is political advertising; and (2) the full name of the person who paid for the political advertising.

Your stations are running advertising purchased by the Texas Right to Life Committee, which include express advocacy by admonishing the listener to vote for candidate Bob Hall for Texas Senate. However, these advertisements fail to include the statutorily required political disclaimer. These advertisements end with "Proudly paid by Texas Right to Life." This statement does not include an acknowledgement that it is, in fact, "political advertising." Therefore, these advertisements are in clear violation of Election Code 255.001.

Additionally, the advertisement at issue fails to state that it was paid for by the Houston-based corporate entity Texas Right to Life Committee, Inc. Salem has previously confirmed that these ads were purchased by the Houston-based 501(c)(4) corporation, and not by a political action committee. Therefore, these advertisements are in clear violation of Election Code 255.001.

Immediately pull all of these ads from our San Antonio, Austin and Rio Grande Valley officials

48

Also, it is important to note that this type of 501(c)(4) corporation is funded by "dark money," meaning that the ads your stations are broadcasting are funded by secret contributors to a 501(c)(4) corporation and this "dark money" funded corporation is obscuring the true source of the communication (yet another Election Code violation). Could these advertisements actually be secretly funded by the same personal injury trial lawyers who worked with Texas Right to Life to attack Governor Perry's medical liability tort reform Constitutional amendment (Proposition 12 in 2003)? Or secretly funded by a Midland-based "dark money" group currently under investigation by the Texas Ethics Commission? Are these illegal advertisements being secretly funded by Houston special interests intent on controlling natural resources, including water, vital to the residents of Senate District 28? Though the public may not know who these "dark money" contributors are, Texas law, specifically the Texas Election Code, requires that the true source of the funding for these radio ads be properly identified in the ads.

Fortunately, the Election Code provides Senator Deuell with recourse for this illegal behavior. Texas Election Code 273.081 ("Injunction") reads:

A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.

Your company is clearly harming Senator Deuell by broadcasting political advertising without the legally required political disclaimer and by failing to properly identify the party paying for these ads. Consequently, your company is the proper defendant in any suit for injunctive relief.

If your company does not immediately cease the broadcast of the illegal advertisements purchased by the Houston-based Texas Right to Life Committee, Inc., Senator Deuell will exercise his right to injunctive relief in court to prevent the continuing harm.

Please advise if you will accept service of the injunction on behalf of your client or if we need to serve Salem's registered agent for service in the event that the broadcast these illegal advertisements is not immediately ceased.

If you have any questions or wish to discuss this matter, please contact me at our firm's Austin office.

49

Very truly yours,

Denton Navarro Rocha Bernal Hyde & Zech, P.C.

ROSS FISCHER
SCOTT M. TSCHIRHART

RF/SMT/khw

R:\MATTERS\NEW CASES\Bob Murray\Draft Demand letter to Sabo 2014-05-19.docx



San Antonio | Austin | Rio Grande Valley

May 21, 2014

Bob Mesrop  
Vice President, Senior Counsel  
Salem Communications Corporation  
4880 Santa Rosa Road  
Camarillo, California 93012

VIA E-MAIL: BobMesrop@  
AND FACSIMILE: (805) 384-4505

RE: Honorable Robert "Bob" Deuell; Confirmation of Salem Running Defamatory Radio Ads.

Dear Mr. Mesrop:

As you know from our previous communications, we represent the Honorable Robert "Bob" Deuell, a member of the Texas Senate. It has been reported that Salem is now running the ads that we had originally complained about in our letter of May 14, 2014 (attached as Exhibit "A"), except with the addition of the language necessary to comply with Texas Election Code 255.001. If so, please be advised that these are non-use campaign ads, if they are as alleged, are not cured of their actionable defamatory content just because they may have been modified to comply with the Texas Election Code.

As part of our analysis and due diligence on this issue, please immediately confirm whether or not the Salem Communications Corporation stations are currently running these ads.

We look forward to hearing from you.

Very truly yours,

Denton Navarro Rocha Bernal Hyde & Zech PC

ROSS FISCHER  
SCOTT M. TSCHIRHART

RF/SMT/kmw

R:\MATTERS\HD\R CANE\Deuell\Defamation\Deuell Demand letter to Salem 2014.061.rtf.doc

Serving all of Texas from our San Antonio, Austin and Rio Grande Valley offices

51



San Antonio | Austin | Rio Grande Valley

May 14, 2014

John Petoyea                                    VIA E-MAIL: jpho.petoyea@kty.com
Director of Operations
Salem Communications Dallas
8400 N. Belt Line Rd.
Suite 110
Irving, Texas 75063

RE:   Notice – Cease & Desist Demand Letter

      RE: Publication of Defamatory Advertisement – Airing Non-use Texas Right to
      Life PAC Defamatory Ad attacking the Honorable Texas State Senator Bob
      Deuell

      Anticipated Litigation, Preservation Notice & Demand Letter

Dear Mr. Petoyea:

## PLEASE IMMEDIATELY CEASE & DESIST ANY FORM OF PUBLICATION OR REPUBLICATION OF THE ABOVE & BELOW REFERENCED ADVERTISEMENT

We represent the Honorable Texas State Senator Bob Deuell, and we have become aware of defamatory advertisements published in certain media outlets which were airing and re-airing a non-use campaign ad by Texas Right to Life PAC (not a candidate ad).

These false and defamatory statements completely and totally misrepresent Senator (and Medical Doctor) Deuell's position on Patient Protection and End of Life Legislation and completely and totally misrepresents Senate Bill 303. Moreover these statements specifically violate the Biblical admonitions against bearing false witness.

Specific FALSE content of this ad includes the following:

Defamation: – "Bob Deuell sponsored a bill to give even more power to these hospital panels over life and death for our ailing family members. Bob Deuell turned his back on life and on disabled patients."

### Exhibit A

52

Dan Bennett
Notice – Cease & Desist Demand Letter
May 14, 2013
3 | Page

TRUTH: Senator Deuell's bill, Senate Bill 303, is endorsed by the Texas Catholic Conference, The Public Policy Voice of the Catholic Bishops of Texas. A true and correct copy of their statement on the matter is attached as Exhibit A and it illustrates just how false and defamatory the Texas Right to Life PAC radio ad is. Senate Bill 303 was designed to add more protection for human life than the existing Texas Advance Directives Act of 1999 (which was supported by Texas Right to Life PAC).

The reforms in Senator Deuell's Bill address a number of principles, including:

• Improving notification and appeal processes for families or surrogates when a Do-Not-Resuscitate Order is used;

• Ensuring that artificially administered nutrition and hydration cannot be withdrawn from a patient, unless continuing to provide that treatment would harm the patient;

• Ensuring the process is applied only to patients for whom life-sustaining treatment would be medically inappropriate and ineffective, and are difficult for the patient to endure;

• Respecting the conscience of physicians and other health care providers so the law does not require them to provide unethical treatment;

• Extending the notification time to a family or surrogate from 48 hours to seven days in advance of an ethics committee meeting;

• Extending the time to find an alternative willing provider from 10 to 14 days;

• Providing the family or surrogate with a patient liaison to help guide them through the process;

• Providing the family or surrogate with a free copy of the patient's medical record;

• Inviting the family or surrogate to attend the ethics committee meeting at which future care for their loved one will be discussed; and,

• Creating reporting requirements for hospitals or hospital systems that have one or more ethics committee meetings on the process outlined in the bill.

These provisions show that the false and defamatory statements made in Texas Right to Life PAC's radio ad totally and completely misrepresent Senator and Dr. Deuell's position and Senate Bill 303. Additionally, the following groups and individuals will corroborate the false and slanderous nature of the Texas Right to Life PAC's radio ad:

Exhibit A

53

Texas Conference of Catholic Bishops
Christian Life Commission of the Southern Baptist Convention
Texas Alliance for Life (Joe Pojman, Ph.D. 512) 4724244)
The Coalition of Texans with Disabilities
The Texas Medical Association (Troy Alexander (512) 370-1300)

If your station has been running this ad, you are hereby put on notice of the false and defamatory statements contained therein. Any further publication of this ad will shift your conduct from reckless disregard to intentional and actual malice. "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). We will be happy to provide additional backup documentation upon request.

**THEREFORE, WE RESPECTFULLY DEMAND THAT YOU IMMEDIATELY CEASE AND DESIST FROM INTENTIONALLY DEFAMING TEXAS STATE SENATOR BOB DEUELL BY REPUBLISHING THESE FALSE AND DEFAMATORY STATEMENTS BY RE-AIRING THE ADVERTISEMENT, AS OUTLINED.**

## LITIGATION HOLD & PRESERVATION DEMAND

You are hereby on notice and should have reason to believe that litigation may result from the claims described above. This letter does not mean that you will be sued, or that this matter may not be resolved without court intervention; however, pursuant to state and federal law, you are now under a legal duty to preserve all evidence, whether printed or electronic, that might become relevant to this matter. Some of this information may be in your possession or control, or in the possession of any and all agents, employees or third-parties under your control. You have a legal duty to preserve that information. The purpose of this letter is to explain to you what that obligation means. Should a claim be made, the lack of documentation that should have been preserved may lead to a presumption that the lack of documentation was an intentional attempt to conceal damaging evidence to your case – an issue described as spoliation.

Information subject to this hold demand may be located anywhere and by anyone connected to this matter. You are required to take the following steps immediately to protect and preserve any of that information that is in your possession or under your control until further notice.

Specifically, you will need to do the following immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this dispute that is under your control. This includes electronic information wherever it is stored – at your work station, on a laptop, or at home.

## Exhibit A

Joe Persqua
Maine – Cease & Desist Demand letter
May 14, 2011
Page

It includes all forms of electronic communication – e.g. e-mail, word processing, calendars, voice messages, videos, photographs, information in your smart phone. This electronic information resides in databases, so that it can be retrieved at a later time.

2. This information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication. Your IT department may be able to assist you with the preservation of electronic information on the servers and on backup tapes.

3. Similarly, preserve any new electronic information that is generated after you receive this letter that is relevant to the dispute or may lead to the discovery of relevant information related to this dispute.

4. Preserve any 'hard copy' information under your control.

**CONTACT YOUR LEGAL ADVISOR IMMEDIATELY.**

While we are hopeful that this matter can be resolved quickly and without substantial investment of further valuable time and expense by any party, your immediate attention to this matter is necessary and appreciated. We would like to thank you in advance for any consideration you lend to this matter, and look forward to resolution.

Very truly yours,

GEORGE E. HYDE
ROSS FISCHER
SCOTT M. TSCHIRHART

Exhibit A

 





**Lone Star Catholic**

**Church In Texas**

**News**



## Texas Bishops Endorse SB 303 To Improve End-Of-Life Care



https://www.txcatholic.org/news/302-bishop-application-block-list-five-second-run-bill

**Exhibit A**



DNRBH&Z

May 21, 2014

VIA E-MAIL: Nicole.waller@cumulus.com

Nicole Waller
Attorney for Cumulus Media Dallas/Fort Worth
2000 Olive Street
West Victory Plaza
Suite 400
Dallas, Texas 75219

RE: Honorable Robert "Bob" Deuell: Confirmation of Cumulus Running Defamatory Radio Ads.

Dear Mr. Waller:

As you know from our previous communications, we represent the Honorable Robert "Bob" Deuell, a member of the Texas Senate. It has been reported that some stations are now running the ads that we had originally complained about in our letter of May 14, 2014 (attached as Exhibit "A"), except (with the addition of the language necessary to comply with Texas Election Code 255.001). If Cumulus Media is doing so, please, be advised that these are non-issue campaign ads, if they are or illegal, are not cured of their actionable defamatory content just because they may have been modified to comply with the Texas Election Code.

As part of our analysis and due diligence on this issue, please immediately confirm whether or not the Cumulus Media stations are currently running these ads.

We look forward to hearing from you.

Very truly yours,

ROSS FISCHER
SCOTT M. TSCHIRHART

RF/SMT/kmw

IN MATTERS/KEY CASES/Bob Deuell/correspondence



May 14, 2014

Dan Bennett                                    VIA E-MAIL: dan.bennett@cumulus.com
Vice President/Market Manager
Cumulus Media
3090 Olive Street
Dallas, Texas 75219

RE:   Notice – Cease & Desist Demand Letter

      RE: Publication of Defamatory Advertisement – Airing Non-use Texas Right to
      Life PAC Defamatory Ad attacking the Honorable Texas State Senator Bob
      Deuell

      Anticipated Litigation, Preservation Notice & Demand Letter

Dear Mr. Bennett:

**PLEASE IMMEDIATELY CEASE & DESIST ANY FORM OF PUBLICATION OR
REPUBLICATION OF THE ABOVE & BELOW REFERENCED ADVERTISEMENT**

      We represent the Honorable Texas State Senator Bob Deuell, and we have
become aware of defamatory advertisements published in certain media outlets which
were airing and re-airing a non-use campaign ad by Texas Right to Life PAC (not a
candidate ad).

      These false and defamatory statements completely and totally misrepresent
Senator (and Medical Doctor) Deuell's position on Patient Protection and End of Life
Legislation and completely and totally misrepresents Senate Bill 303. Specific FALSE
content of this ad includes the following:

Defamation – "Bob Deuell sponsored a bill to give even more power to these hospital
panels over life and death for our ailing family members. Bob Deuell turned his back on
life and on disabled patients."

TRUTH: Senator Deuell's bill, Senate Bill 303, is endorsed by the Texas Catholic
Conference, The Public Policy Voice of the Catholic Bishops of Texas. A true and
correct copy of their statement on the matter is attached as Exhibit A and it illustrates

## Exhibit A

just how false and defamatory the Texas Right to Life PAC radio ad is. Senate Bill 303 was designed to add more protection for human life than the existing Texas Advance Directives Act of 1999 (which was supported by Texas Right to Life PAC).

The reforms in Senator Deuell's Bill address a number of principles, including:

• Improving notification and appeal processes for families or surrogates when a Do-Not-Resuscitate Order is used;

• Ensuring that artificially administered nutrition and hydration cannot be withdrawn from a patient, unless continuing to provide that treatment would harm the patient;

• Ensuring the process is applied only to patients for whom life-sustaining treatment would be medically inappropriate and ineffective, and are difficult for the patient to endure;

• Respecting the conscience of physicians and other health care providers so the law does not require them to provide unethical treatment;

• Extending the notification time to a family or surrogate from 48 hours to seven days in advance of an ethics committee meeting;

• Extending the time to find an alternative willing provider from 10 to 14 days;

• Providing the family or surrogate with a patient liaison to help guide them through the process;

• Providing the family or surrogate with a free copy of the patient's medical record;

• Inviting the family or surrogate to attend the ethics committee meeting at which future care for their loved one will be discussed; and

• Creating reporting requirements for hospitals or hospital systems that have one or more ethics committee meetings on the process outlined in the bill.

These provisions show that the false and defamatory statements made in Texas Right to Life PAC's radio ad totally and completely misrepresent Senator and Dr. Deuell's position and Senate Bill 303. Additionally, the following groups and individuals will corroborate the false and slanderous nature of the Texas Right to Life PAC's radio ad:

Texas Conference of Catholic Bishops
Christian Life Commission of the Southern Baptist Convention
Texas Alliance for Life (Joe Pojman, PhD (512) 477-1244)

# Exhibit A

60

Dan Stonecki
Notice – Cease & Desist Demand Letter
May 14, 2014
STP a [...]

The Coalition of [...] with Disabilities
The Texas Medical Association (Troy Alexander (512) 370-1260)

If your station [...] issue out during this ad, you are hereby put on notice of the false and defamatory statements contained therein. Any further publication of these will shift your conduct from reckless disregard to intentional and could make "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or [...] facts [...] misleading." [...] *KTRK Television, Inc.*, 395 S.W.3d 165 (Tex. 2005). We will be happy to provide additional [...] documentation upon request.

THEREFORE, WE RESPECTFULLY DEMAND THAT YOU IMMEDIATELY CEASE AND DESIST FROM INTENTIONALLY DEFAMING TEXAS STATE SENATOR BOB DEUELL BY REPUBLISHING THESE FALSE AND DEFAMATORY STATEMENTS BY RE-AIRING THE ADVERTISEMENT, AS OUTLINED.

LITIGATION HOLD & PRESERVATION DEMAND

You are hereby on notice and should have reason to [believe] that litigation may result from the claims described above. This letter does not mean that you will be sued, or that this matter may not be resolved without your intervention; however pursuant to state and federal law, you are now under a legal duty to preserve all evidence, whether printed or electronic, that might become relevant to this matter. Some of this information may be in your possession or control, or in the possession of any and all other employees or individuals under your control. You have a legal duty to preserve this information. The purpose of this letter is to explain to you what that obligation means. Should a claim be made, the lack of documentation that should have been preserved may lead to a presumption that the lack of documentation was an intentional attempt to conceal damaging evidence in your case – a causal determination question.

Information relevant to this hold demand may be located anywhere and by anyone connected to this matter. You are required to take the following steps immediately to protect and preserve any of that information that is in your possession or under your control until further notice.

Specifically, you will need to do the following immediately:

1. Suspend deletion, overwriting, or any other destruction of electronic information relevant to this matter that is under your control. This includes documents, information whatever is stored at your work station, on a laptop, or at home. It includes all forms of electronic communication – e.g. e-mail, word processing, calendars, voice messages, videos, photographs, information in your system

phone. This electronic information must be preserved so that it can be retrieved at a later time.

2. The information must be preserved in its original electronic form, so that all information contained within it, whether visible or not, is also available for inspection – i.e., it is not sufficient to make a hard copy of electronic communication. Your IT department may be able to assist you with the preservation of electronic information on the server and on back up tapes.

3. Similarly, preserve any new electronic information that is generated after you receive this letter that is relevant to this dispute or may lead to the discovery of relevant information related to this dispute.

4. Preserve any "hard copy" information under your control.

CONTACT YOUR LEGAL ADVISOR IMMEDIATELY.

While we are hopeful that this matter can be resolved quickly and without substantial investment of further valuable time and expense by any party, your immediate attention to this matter is necessary and appreciated. We would like to thank you in advance for any consideration you lend to this matter, and look forward to resolution.

Very truly yours,

GEORGE E. HYDE
ROSS FISCHER
SCOTT M. TSCHIRHART

GEH/RF/SMT/ha

Exhibit A

62









# TEXAS CATHOLIC CONFERENCE

## Texas Bishops Endorse SB 303 To Improve End-Of-Life Care

EXHIBIT
A

Exhibit A

64

NO. 2014-32179

| | § | |
|---|---|---|
| TEXAS RIGHT TO LIFE COMMITTEE, INC. | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 152ND JUDICIAL DISTRICT |
| | § | |
| BOB DEUELL | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF SCOTT M. TSCHIRHART

STATE OF TEXAS     §
                      §
COUNTY OF TRAVIS     §

BEFORE ME, the undersigned authority, a Notary Public, on this day personally appeared **Scott M. Tschirhart**, and being by me duly sworn on his oath deposed and said:

My name is Scott M. Tschirhart. I am over the age of eighteen, have never been convicted of a felony or crime of moral turpitude, and am fully competent in all respects to make this affidavit. I am an attorney licensed to practice law in the State of Texas.

I am familiar with facts stated herein because I served as one of the attorneys representing Senator Bob Deuell in connection with political ads that ran on Salem Communications Corporation and Cumulus Media outlets in North East Texas during May of 2014. True and correct copies of the scripts from those ads are attached to the Motion to Dismiss as Exhibit "A."

In the course of my representation of Senator Deuell I wrote letters to Salem and Cumulus between May 14, 2014 and May 21, 2014. True and correct copies of those letters are attached to the Motion to Dismiss as Exhibit "B." I wrote these letters in anticipation of filing suit against Salem and/or Cumulus if the illegal and defamatory ads were not either discontinued or corrected.

After I sent the May 14, 2014 letters the ads were modified to remove certain defamatory and misleading language. After I sent the May 19, 2014 letters, the ads were modified to include the language required by *Texas Election Code* 255.001. After I sent the May 21, 2014 letters, it appeared that the ads were changed again with regard to certain defamatory language.

Because the offending language was removed, and the ads came into compliance with the requirements of *Texas Election Code* 255.001, after the May 21, 2014 letters were sent, I and the lawyers in my firm wrote no more letters and had no

EXHIBIT
C

65

more contact with either Salem or Cunulus.

Further, affiant sayeth not.

_____
Scott M. Tschirhart

SUBSCRIBED AND SWORN TO BEFORE ME by the said Scott M. Tschirhart on this

5th of September, 2014, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC, STATE OF TEXAS

ESPERANZA AVILA
My Commission Expires
July 14, 2015

2

66

# TAB NO. 3

CAUSE NO. 2014-32179

| | | |
|---|---|---|
| TEXAS RIGHT TO LIFE COMMITTEE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| BOB DEUELL, | § | |
| | § | |
| DEFENDANT. | § | 152ND JUDICIAL DISTRICT |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S CHAPTER 27 MOTION TO DISMISS

To the Honorable Court:

NOW COMES Plaintiff, Texas Right to Life Committee, Inc., and in response to Defendant's Motion to Dismiss filed pursuant to Tex. Civ. Prac. & Rem. Code Chapter 27, would show the court the following:

## DEFENDANT FAILED TO MEET ITS STATUTORY BURDEN

1.      Defendant has not met his burden pursuant to Tex. Civ. Prac. & Rem. Code 27.03. Pursuant to the Anti-SLAPP statute on which Defendant is relying, Defendant has the burden of showing by a preponderance of the evidence that the Plaintiff's cause of action is based upon the Defendant's exercise of a constitutionally protected right of speech, petition or association. The Defendant has not made any such showing in his motion.

2.      This is a case in which Texas Right to Life produced and bought radio advertisements from several radio stations at a cost of over $50,000 setting forth in the public forum Texas Right to Life's opinions and statements concerning the Defendant's voting record. Defendant disagreed with the position of Texas Right to Life and, instead of engaging in public debate, had his lawyers write letters threatening the radio stations with lawsuits if Texas Right to Life's paid advertisements were not pulled from the

I

airwaves. When several of the stations succumbed to the threats, Texas Right to Life immediately took steps to mitigate its damages and sued for tortious interference of its broadcasting contracts. Simply stated, no one has the right to tortuously interfere with another's contract. Tortious interference is not a constitutionally protected right. Accordingly, this suit is not based upon the Defendant's exercise of the right of speech, petition or assembly as required under section 27.003. The Defendant's motion should be denied on this basis alone.

3.      Defendant turns logic on its head in asserting that his threat of suing radio stations who broadcast third party advertisements of which he disagrees is somehow the exercise of free speech. Rather, the defendant is quashing other's rights of free speech. Maintaining that only this defendant has the right to determine what others might say about him or his voting record by way of a Tex. Civ. Prac. & Rem. Code Chapter 27 motion is ludicrous. Defendant's remedy at the time was to engage in public debate, not quash by threat of suit, another's right to speak freely and to publicly publish, at their own expense, their opinions.

4.      The quashing of Texas Right to Life's speech by interfering with its broadcasting contracts is the basis of Texas Right to Life's suit – not the exercise of speech by the Defendant.

## TEXAS RIGHT TO LIFE HAS CLEAR AND SPECIFIC EVIDENCE OF EACH ELEMENT OF ITS CAUSE OF ACTION

5.      Defendant admits in his motion to dismiss that he tortuously interfered with the broadcasting contracts of Texas Right to Life. Exhibit "B" to Defendant's Motion to Dismiss is admittedly a true and correct copy of each piece of correspondence sent to the

broadcasters with whom Texas Right to Life had contracted. Texas Right to Life, in support of this response, relies upon the letters and attachments comprising Exhibit "B" and offers them into evidence in this hearing and adopts them into this response as if set out in full.

6. Pursuant to section 27.005(c), if the Defendant met his burden under sec 27.003, all Texas Right to Life must show is *clear and specific* evidence of each element of its cause of action. Attached hereto as Exhibit "A" and incorporated by reference as if set out in full is the affidavit of James. J. Graham, the executive director of Texas Right to Life. It indisputably sets forth clear and specific evidence of the fact that Texas Right to Life entered into contracts with Malone Media Design Group, Cumulus Media Dallas-Fort Worth, Salem Communications, and CBS Radio Texas for the production and broadcasting of radio advertisements. Defendant's Exhibit "B" sets forth clear and specific evidence of tortious interference with those contracts. Finally, Mr. Graham's affidavit sets out clear and specific evidence of damages caused by the Defendant's tortious interference.

## PRAYER

Without waiver of Plaintiff's pending Motion for Limited Discovery, Texas Right to Life prays that Defendant's Motion to Dismiss be denied and that Plaintiff have all such other and further relief, both general and special, at law or in equity to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

3

92

/s/ Joseph M. Nixon

Joseph M. Nixon
Texas Bar No.: 15244800
1300 Post Oak Blvd, 25th Floor
Houston, Texas 77056
(713) 871-6809 (Telephone)
(713) 960-1527 (Facsimile)

James E. "Trey" Trainor, III
Texas Bar No.: 24042052
401 West 15th Street, Suite 845
Austin, Texas 78701
(512) 623-6700 (Telephone)
(512) 623-6701 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
TEXAS RIGHT TO LIFE COMMITTEE, INC.**

4

93

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2014, a true and correct copy of this pleading was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

George E. Hyde                                          *Via eService*
Scott M. Tschirhart
Denton Navarro Rocha Bernal Hyde & Zech
2500 W. William Cannon Dr., Suite 609
Austin, Texas 78745
(512) 279-6431
(512) 279-6438 (Facsimile)
george.hyde@rampage-aus.com
scott.tschirhart@rampage-aus.com

/s/ *Joseph M. Nixon*
Joseph M. Nixon

CAUSE NO. 2014-32179

| | | |
|---|---|---|
| TEXAS RIGHT TO LIFE COMMITTEE, INC., | § § § | IN THE DISTRICT COURT OF |
| PLAINTIFF, | § § § | |
| V. | § § | HARRIS COUNTY, TEXAS |
| BOB DEUELL, | § § | |
| DEFENDANT. | § § | 152ND JUDICIAL DISTRICT |

## AFFIDAVIT OF JAMES J. GRAHAM

**BEFORE ME,** the undersigned authority, on this day personally appeared James J. Graham, who on his oath stated as follows:

My name is James J. Graham. I am currently the Executive Director of Texas Right to Life Committee, Inc., and have held that position for 18 years. Texas Right to Life Committee, Inc. is a 501(c)(4) Texas not for profit corporation and is the oldest and largest, non-sectarian and non-partisan, statewide pro-life organization in Texas.

On or about May 6, 2014, Texas Right to Life Committee, Inc., entered into a contract with Malone Media Design Group to secure the production of radio advertisements designed to educate the voting public in the Dallas/Ft. Worth area on the voting record of State Senator Bob Deuell. Texas Right to Life Committee, Inc., spent approximately $450 to have the radio advertisements produced.

On or about May 7, 2014, Texas Right to Life Committee, Inc., entered into a contract with Cumulus Media Dallas-Fort Worth to secure airtime for their radio advertisements. Texas Right to Life Committee, Inc., paid approximately $17,935 for the placement and airing of the radio advertisements with Cumulus Media.

On or about May 8, 2014, Texas Right to Life Committee, Inc. entered into a contract with Salem Communications to secure airtime for their radio advertisements. Texas Right to Life Committee, Inc., paid approximately $22,015 for the placement and airing of the radio advertisements with Salem Communications.

On or about May 14, 2014, Texas Right to Life Committee, Inc., received notice from Cumulus Media and Salem Communications that agents of Mr. Deuell *had contacted them and that they were suspending the airing of our commercials* based upon the legal threats made by Mr. Deuell.

On May 14, 2014, Texas Right to Life Committee, Inc., contacted our legal counsel who immediately contacted Cumulus Media and Salem Communications in an attempt to resume our radio advertisements airing.

Cumulus Media and Salem Communications were informed by counsel for Texas Right to Life Committee, Inc., that we considered the efforts of Mr. Deuell to be tortious interference with our existing contract and a violation of our right to engage in political speech.

As a compromise to resume airing our radio advertisements, given the concerns of Cumulus Media and Salem Communications, Texas Right to Life Committee, Inc., agreed to produce a new radio advertisement and replace the original radio advertisement suspended due to the threats of Mr. Deuell.

Texas Right to Life Committee, Inc., went back to Malone Media Design Groups and had another radio advertisement produced and delivered to Cumulus Media and Salem Communications.

Recognizing that Mr. Deuell's interference had disrupted the timing and effectiveness of the radio advertisements originally contemplated by Texas Right to Life Committee, Inc., the organization recognized that it needed to take remedial measures to make up for the lost advertising time so it contracted with CBS Radio Texas for additional airtime in the Dallas/Ft Worth media market for the new radio advertisement. Texas Right to Life Committee, Inc., paid approximately $15,037 for the placement and airing of the new radio advertisements with CBS Radio Texas.

Further affiant sayeth not.

James J. Graham

**SUBSCRIBED AND SWORN TO** before me by James J. Graham, on this

the 23rd day of September 2014.



Notary Public in and for the State of Texas